[L.A. No. 28186. In Bank. Feb. 11, 1965.]

J. DUNLOP, Plaintiff and Respondent, v. KENNETH
TREMAYNE, Defendant and Appellant.

Paris & Paris and Bette S. Paris for Defendant and Appel-
lant.

James H. Denison and Edward S. Stutman for Plaintiff and
Respondent.

MOSK, J.— This is a monothetic case which poses
the question whether payments made by an employer, pursuant

to an industrywide collective bargaining agreement, into independent trust funds for medical, welfare, and retirement benefits constitute "wages" as that word is used in section 1204 of the Code of Civil Procedure.[1]

Cal-Pacific Downey, the employer, entered into collective bargaining contracts with unions representing its employees, as part of an industrywide collective bargaining agreement in the lumber industry in Southern California. The agreements obligated the employers to make monthly payments into two trust funds, one for retirement benefits and the other for health and welfare benefits. Each employer paid a flat sum for each employee who worked for him for more than 80 hours each month. Employees are entitled to benefits only as long as they are employed by one of the parties to the agreements. Employee health and welfare benefits are determined by the terms of a group policy carried by the trust, and retirement benefits are calculated on the basis of an individual's total period of employment in the industry. No relationship exists between amounts contributed by employers and the benefits to which any employee is entitled.

No employee has any rights, vested or otherwise, in the trust funds; he has only contractual rights against the trust for benefits specified in the contracts. Only the trustees are authorized to sue for and collect delinquent payments. No withholding tax deductions are made from or because of the payments, nor are the payments included in social security computations.

Cal-Pacific made an assignment for the benefit of creditors to defendant Tremayne, pursuant to section 1204 of the Code of Civil Procedure. Cal-Pacific then owed $1,057.50 to the welfare fund and $1,269.80 to the retirement fund. Plaintiff, as assignee of the trustees, brought an action for declaratory relief, contending that these claims are entitled to a priority. The trial court entered judgment for plaintiff.

This is a case of original impression in California, and decisions regarding similar statutes of other states and the

---

[1] "When any assignment, whether voluntary or involuntary, and whether formal or informal, is made for the benefit of creditors of the assignor, or results from any proceeding . . . against him, or when any property is turned over to the creditors of a person, firm, association or corporation, or to a receiver or trustee for the benefit of creditors, the *wages and salaries of miners, mechanics, salesmen, servants, clerks, laborers, and other persons, for personal services rendered . . . constitute preferred claims* and liens as between creditors of the debtor, and must be paid by the trustee, assignee or receiver before the claim of any other creditor of the assignor. . . ." (Code Civ. Proc., § 1204.) (Italics added.)

United States provide no clear or persuasive pattern. Each case appears to rest upon the language and purpose of the statute involved and upon questions of policy.

 Section 1204 of the Code of Civil Procedure was originally enacted in 1872, and has remained unchanged as to basic purpose since that time. No illuminating legislative history can be found, but the obvious intent of the section is to ease the economic burden of employees of businesses in financial distress. The social benefits of this public policy are self-evident. However, employee "fringe benefits" are a comparatively recent development in the history of labor-management relations and were not within the contemplation of framers of the statute. Thus the question before us is whether the same policies applicable to direct wages should apply to fringe benefits. While employees generally give up additional direct wages in return for fringe benefits in the bargaining process, the employees do not have a direct claim to monies paid into funds of this type.

Both plaintiff and defendant point to the history of sections 200-229 of the Labor Code in support of their positions.[2] These sections deal with the criminal sanctions for failure to pay wages. Under section 216, enacted in 1919, it is a misdemeanor to wilfully fail to pay wages. Section 227 was added in 1955, making failure to pay to a health, welfare, or pension fund a misdemeanor. This action of the Legislature does not have the persuasive effect which has been suggested. A criminal statute requires strict interpretation, and in the absence of specific legislative action, failure to pay fringe benefits could not have been included under the criminal sanctions of Labor Code section 216. On the other hand, the priority provisions of the Code of Civil Procedure may be interpreted less narrowly, and if reasonable interpretation or policy con-

[2]Plaintiff calls to our attention that sections relating to health and welfare funds, pension funds, vacation plans, etc., are placed in Part 1 of the Labor Code, titled "Compensation," and under Chapter 1 thereof titled "Payment of Wages," and *not* under Part 3 titled "Privileges and Immunities." While there is some superficial persuasiveness to this contention, this court has consistently been wary of ascertaining legislative purpose from the placement of a code section, except where the act itself is ambiguous. Mere code geography is generally among the least helpful indicia of legislative intent. (See *In re Bandmann* (1958) 51 Cal.2d 388, 392 [333 P.2d 339], and *People* v. *Berger* (1955) 131 Cal.App.2d 127, 129 [280 P.2d 136].) In addition, section 6 of the Labor Code contains the following admonition: "Division, part, chapter, article and section headings contained herein shall not be deemed to govern, limit, modify or in any manner affect the scope, meaning, or intent of the provisions of any division, part, chapter, article, or section hereof."

siderations suggest the inclusion of fringe benefit payments in the definition of the term "wages" for the purposes of this section, no insurmountable barrier exists.

The United States Supreme Court has held that health and welfare fund payments are not entitled to the priority afforded wages in the federal bankruptcy statute in *United States* v. *Embassy Restaurant, Inc.* (1959) 359 U.S. 29 [79 S.Ct. 554, 3 L.Ed.2d 601], under facts comparable to those here. However, the court reached its decision on the basis of the particular language of the statute, which spoke of "wages . . . due to workmen" (30 Stats. 563, § 64, as amended, 11 U.S.C. (Supp. V) § 104(a)(2)) and held that these payments were not due to workmen and therefore not entitled to the priority. Justice Black dissented in the *Embassy* case, joined by two justices. The dissent maintained that the payments are compensation for services rendered, that they are not gifts, and that they are looked upon as a form of wages by all the parties to the collective agreements. "It cannot be argued that a sum paid by an employer for a worker's services loses its status as wages merely because it is used to purchase insurance benefits." (*United States* v. *Embassy Restaurant, Inc.* (1959) *supra,* 359 U.S. 29, 37-38, [dissenting opinion].)

The California provisions are less restrictive than the federal statute, referring only to the "wages and salaries of [various classes of employees]." Thus the reasoning adopted by the majority in the *Embassy* case is not necessarily applicable. The language of the California Code section may be interpreted as including any sums that may be defined as wages earned by the employees.

Other cases are not particularly helpful, for there has been a division of opinion over whether welfare payments are wages. Two cases which have held that contributions to health, welfare and pension funds are wages are *Inland Steel Co.* v. *N.L.R.B.* (1948) 170 F.2d 247 [12 A.L.R.2d 240], cert. den. 336 U.S. 960 [69 S.Ct. 887, 93 L.Ed. 1112]) and *Trustees of Local 88* v. *State Tax Commission* (Mo. 1963) 367 S.W.2d 549. But neither of those cases involved priority statutes. Cases holding contra are *In re Well Bilt Box Spring Corp.* (1949) 196 Misc. 848 [89 N.Y.S.2d 768], and *In re National Meat Supply Co., Inc.* (1961) 66 N.J. Super. 423 [169 A.2d 236]. Although both were priority cases, they are decisions of lower tribunals, and neither offers significant helpful reasoning in the opinions. The New Jersey case relied almost entirely upon the *Embassy Restaurant* case, *supra,* and the New York

decision has since been legislatively overruled. (See § 22, New York Creditor and Debtor Law.)

It is appropriate to take note of the loss that will be sustained by the employees if these claims do not receive priority. The sums in dispute will be used ultimately to pay insurance premiums for employees of Cal-Pacific during the 90-day period prior to the assignment for benefit of creditors. Not until the payments are made will these employees be entitled to reimbursement for claims arising during this period. They will necessarily carry the costs themselves, contrary to the collective bargaining agreement. Clearly this loss could be as burdensome to an employee as the loss of wages for a similar period. Thus the basic purpose of the statute to alleviate the difficulties of employees of an insolvent business during a resulting period of unemployment is well served by including health, welfare, and pension fund contributions under the term "wages" for preference purposes.

The terms and conditions of the payments were ascertained by the employers and representatives of the employees in wage negotiations, as part of a total wage package. Payments are made by the employer not as a gift but in consideration of the services of the employees. In an economic sense they are wages. To treat them as wages under section 1204 of the Code of Civil Procedure for purposes of priority when the employer becomes financially distressed would seem to do no violence to the clear purposes of the statute, but on the contrary would serve those purposes well.

The judgment is affirmed.

Traynor, C. J., Peters, J., Tobriner, J., Peek, J., and Schauer, J.,* concurred.

McCOMB, J.—I dissent. I would reverse the judgment for the reasons expressed by Mr. Justice Kingsley in the opinion prepared by him for the District Court of Appeal in *Dunlop* v. *Tremayne* (Cal.App.) 40 Cal.Rptr. 550.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.