[No. A057981. First Dist., Div. One. Feb. 17, 1993.]

CARPENTERS HEALTH AND WELFARE TRUST FUND FOR
CALIFORNIA et al., Plaintiffs and Appellants, v.
SURETY COMPANY OF THE PACIFIC et al., Defendants and
Respondents.

## COUNSEL

Van Bourg, Weinberg, Roger & Rosenfeld, Victor J. Van Bourg, Michael B. Roger, Robert M. Hirsch, Blythe Mickelson and M. Catherine Jones for Plaintiffs and Appellants.

Haesloop & Hudson and Geoffrey R. Hudson for Defendants and Respondents.

Hausman & Sosa, Jeffrey M. Hausman and Larry D. Stratton as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**STEIN, J.**—Carpenters Health and Welfare Trust Fund for California, and other multiemployer trust funds (the Trust Funds), filed a complaint against David Barry, Community Construction, and Surety Company of the Pacific (Surety). The complaint alleged, as relevant here, that Barry, doing business as Community Construction, had failed to deposit certain fringe benefits into the Trust Funds as required under a collective bargaining agreement. The Trust Funds brought the instant action to collect the unpaid amounts of $27,459.08 from Barry. The complaint further alleged that Surety had issued a contractor's bond in the amount of $5,000, naming Community Construction as principal. The Trust Funds sought $3,000 from Surety on this bond, as authorized by Business and Professions Code section 7071.5, subdivision (d).[1]

The superior court granted summary judgment to Surety on the ground that the California statute is preempted by the Employee Retirement Income

---

[1]Subdivision (d) of Business and Professions Code section 7071.5 provides, as relevant here, that one of the beneficiaries of a contractor's bond is "Any express trust fund, or the trustees of any express trust fund, damaged as the result of the licensee's failure to pay fringe benefits for eligible employees represented by the union which is signatory to the collective-bargaining agreement. . . . Liability on the contractor's bond shall be limited to the

Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.). The Trust Funds appeal.

DISCUSSION

■ We, as did the trial court, find that the recent California Supreme Court decision in *Carpenters So. Cal. Admin. Corp.* v. *El Capitan Development Co.* (1991) 53 Cal.3d 1041 [282 Cal.Rptr. 277, 811 P.2d 296], controls the present case and mandates a finding that Business and Professions Code section 7071.5, subdivision (d) is indeed preempted by ERISA. In *El Capitan*, as here, an employer (there a subcontractor) failed to make fringe benefit contributions to various multiemployer trust funds. As here, the trust funds (through Carpenters Southern California Administrative Corporation (CSCAC) as the administrator and assignee of the rights of the trust funds) sought to collect the unpaid amounts. As here, a state statute provided a means of collection. The statute at issue in *El Capitan* was Civil Code section 3111, which gave trust funds the power to collect unpaid amounts through mechanic's lien procedures. The issue, there as here, was whether the state law "related to" an ERISA plan. (See § 514(a) of ERISA, 29 U.S.C. 1144(a).)

The court noted that trust funds such as those at issue in that case, and here, are employee pension benefit plans or employee welfare benefit plans within the meaning of ERISA. (*Carpenters So. Cal. Admin. Corp.* v. *El Capitan Development Co., supra,* 53 Cal.3d at p. 1045.) The court held, simply, that the state law at issue "relates to" ERISA plans "by creating a mechanism for enforcing an employer's contribution obligations that Congress did not provide." (*Id.* at p. 1048.) The court, although finding that it was enough that the state law "related to" ERISA, further found that it was preempted even if preemption occurred only if a state law "regulated" an ERISA plan. (*Ibid.*) The court's elaboration on this simple conclusion is perfectly applicable to the present case:

"ERISA preempts new state-law causes of action for the collection of contributions because, consistent with its goal of providing 'appropriate sanctions and ready access to federal courts' (29 U.S.C. § 1001(b)), ERISA itself provides the remedies for the collection of contributions. Section 502(a) of ERISA (29 U.S.C. § 1132(a)) provides in part that '[a] civil action may be brought— . . . [¶] by a participant, beneficiary, or *fiduciary* (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan or (B) to obtain other appropriate equitable relief (i) to

---

difference between the actual loss to the trust fund and the amount realized by the trust fund from the proceeds of any other bond . . . ."

redress such violations or (ii) *to enforce any provisions of this title or the terms of the plan*.' (29 U.S.C. § 1132(a)(3), italics added.)

"Additionally, section 515 of ERISA (29 U.S.C. § 1145) provides: . . . 'Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such an agreement.' Hence, a participant, beneficiary or a fiduciary can bring an action under section 502(a) of ERISA (29 U.S.C. § 1132(a)) to enforce an employer's obligation under section 515 of ERISA (29 U.S.C. § 1145).

"As the Court of Appeal in this case and the federal court in [*Iron Workers Pension Fund* v. *Terotechnology* (5th Cir. 1990) 891 F.2d 548] noted, [*Pilot Life Ins. Co.* v. *Dedeaux* (1987) 481 U.S. 41 (95 L.Ed.2d 39, 107 S.Ct. 1549)], establishes that the remedies in section 502 of ERISA are exclusive and displace state laws which purport to create parallel remedies. '[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme. . . . The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The . . . carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." ' [Citations.] 'The expectations that a federal common law of rights and obligations under ERISA-regulated plans would develop, . . . would make little sense if the remedies available to ERISA participants and beneficiaries under § 502(a) [of ERISA] could be supplemented or supplanted by varying state laws.' [Citation.]

"In essence, CSCAC's action under section 3111 is a civil action by a fiduciary to enforce the provisions of ERISA with regard to employer contributions (i.e., § 502(a) of ERISA, 29 U.S.C. § 1132(a) & § 515 of ERISA, 29 U.S.C. § 1145) and to enforce the terms of the plan (i.e., the funding contributions required by the collective bargaining agreement). Like the Louisiana law in *Iron Workers, supra*, 891 F.2d 548, the state is attempting to 'regulate' the terms and conditions of a pension plan through the use of a new cause of action, its lien laws. State laws, however, may not be used to supplement or supplant the civil enforcement scheme developed by ERISA. [Citation.]" (*Carpenters So. Cal. Admin. Corp.* v. *El Capitan Development Co., supra*, 53 Cal.3d at pp. 1052-1054, fns. omitted.)

The present action, like that in *El Capitan*, is in essence a civil action by a fiduciary to enforce provisions of ERISA with regard to employer contributions, and attempts to enforce the terms of the plan by means of a new cause of action—here, through the provisions of Business and Professions Code section 7071.5, subdivision (d). It is undoubtedly true, as the Trust Funds assert, that in providing a method of collecting unpaid fringe benefits, section 7071.5, subdivision (d), aids employee benefit plans, and can be said to further the interests of ERISA. The same, however, could be said of Civil Code section 3111. That the state statutes further those interests, however, is irrelevant. They are preempted because ERISA provides its own collection mechanisms.

The Trust Funds point out that it was held in *Mackey v. Lanier Collection Agency & Serv.* (1988) 486 U.S. 825 [100 L.Ed.2d 836, 108 S.Ct. 2182] that a state's general garnishment statute was not preempted by ERISA even though ERISA welfare benefit plans might be subjected to garnishment proceedings. The Trust Funds argue that, like the general garnishment statute in *Mackey*, Business and Professions Code sections 7071.5 through 7071.11 benefit a broad class of potential claimants and, under the holding in that case, should not be deemed preempted. We perceive a significant difference, however, between a statute of general application, such as the general garnishment statute in *Mackey*, and Business and Professions Code section 7071.5, subdivision (d), which expressly and specifically singles out ERISA benefit plans. That other statutes give similar collection rights to other entities is not persuasive. Civil Code section 3111 is preempted by ERISA even though entities other than employee benefit plans have the right to mechanics' liens. Indeed, *Mackey* supports our position. That case involved two statutes: the general garnishment statute and a special statute exempting ERISA plans from garnishment procedures. The Supreme Court struck down the special statute, finding that it was preempted by ERISA because it "related to" an employee benefit plan as it "has a connection with *or reference* to such a plan." (*Mackey, supra,* 486 U.S. at p. 829 [100 L.Ed.2d at p. 843], internal quotation marks omitted.) The general garnishment statute was not exempted because, in part, although it would involve and affect employee benefit plans, it "does not single out or specially mention ERISA plans of any kind." (*Id.* at p. 831 [100 L.Ed.2d at p. 845].) In creating a remedy for trust funds, Business and Professions Code section 7071.5, like Civil Code section 3111, singles out and specifically mentions employee benefit plans.

A similar conclusion was reached, recently, by the court in *Carpenters Health & Welfare Trust Fund v. Developers Ins. Co.* (1992) 11 Cal.App.4th 1539, involving the state-created remedy of stop notices. Civil Code section

3158 provides that this remedy is available to "Any of the persons named in Sections 3110, 3111, and 3112." Section 3111, but only section 3111, names trust funds. In finding section 3158 to be preempted as to trust funds, and notwithstanding that the section benefitted entities other than trust funds, the court held, "this part of the stop notice provisions 'relates to' ERISA plans by virtue of the fact that it is specifically designed to affect them. It provides such funds a stop notice remedy not provided by Congress, thus singling out ERISA plans for special treatment." (*Carpenters, supra*, at pp. 1545-1546.) In creating a remedy for trust funds, Business and Professions Code section 7071.5, like Civil Code section 3111 and Civil Code section 3158, singles out and specifically mentions employee benefit plans.

The Trust Funds also find it significant that sureties voluntarily assume liability on contractors' license bonds. The Trust Funds argue that *El Capitan* should not apply because the remedy in that case—enforcement of a mechanic's lien—affects owners who have no control over whether or not the lien is recorded, i.e., the owners do not voluntarily accept liability. The decision in *El Capitan*, however, did not turn upon the "control" over the remedy afforded the defendant, but on the relationship between the remedy and ERISA. We have concluded that the relationship between remedy and ERISA in the present case is analogous to that in *El Capitan*. We note, however, that the issue of control in the instant case was also present in *Carpenters Health & Welfare Trust Fund* v. *Developers Ins. Co., supra*, 11 Cal.App.4th 1539, where one of the defendants was the surety which had issued a release bond, which the trust fund sought to enforce. The fact that the surety had voluntarily assumed liability in that case had no effect on the outcome of the case.

We conclude that Business and Professions Code section 7071.5 is preempted by ERISA.

■ The Trust Funds' final argument is that summary judgment should not have been granted because they are still entitled to maintain an action under Business and Professions Code section 7071.5, subdivision (c). Subdivision (c) provides that a contractor's bond is for the benefit of "Any employee of the licensee damaged by the licensee's failure to pay wages." The Trust Funds argue that there is authority that the term "wages" includes fringe benefits (*Dunlop* v. *Tremayne* (1965) 62 Cal.2d 427, 431 [42 Cal.Rptr. 438, 398 P.2d 774, 17 A.L.R.3d 368]) and that employee benefit funds are entitled to bring actions to enforce the rights of participating employees (*United States* v. *Carter* (1957) 353 U.S. 210, 219-220 [1 L.Ed.2d 776, 783-784, 77 S.Ct. 793]). We are not at all certain that section 7071.5, subdivision (c), if construed as the Trust Funds propose, would itself withstand preemption. In any event, the issue is not whether employee benefit

funds may be entitled to prosecute claims on behalf of participating employees, but whether Business and Professions Code section 7071.5, subdivision (c), confers such authority on them. Section 7071.5 carefully distinguishes trust funds (subd. (d)) from employees (subd. (c)). It carefully distinguishes fringe benefits (subd. (d)) from wages (subd. (c)). It is not reasonable to presume that, notwithstanding this careful distinction, the Legislature intended to give trust funds the right to bring actions to recover unpaid fringe benefits under subdivision (c), effectively rendering subdivision (d) unnecessary. ■ "[S]tatutes should be interpreted in such a way as to make them consistent with each other, rather than obviate one another." (*Nickelsberg* v. *Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 298 [285 Cal.Rptr. 86, 814 P.2d 1328].) It follows that the Trust Funds are not entitled to pursue their claims by means of subdivision (c).

The judgment is affirmed.

Strankman, P. J., and Dossee, J., concurred.