[No. S057369. Nov. 24, 1997.]

WILKIE CHEONG, Plaintiff and Appellant, v.
DREW R. ANTABLIN, Defendant and Respondent.

**COUNSEL**

Gordon, Edelstein, Krepack, Grant, Felton & Goldstein and Joshua M. Merliss for Plaintiff and Appellant.

Horvitz & Levy, David S. Ettinger, Christine A. Pagac, Bollington and Roberts, James D. Roberts and Wayne Hunkins for Defendant and Respondent.

Hancock, Rothert & Bunshoft, John E. Fagan, Joseph P. Collins and Peter J. Koenig as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**CHIN, J.**—Two friends went skiing together. One collided with the other, inflicting injury. We must decide whether the injured skier has a valid action

in tort against the uninjured skier. The issue's resolution requires us to revisit the questions of duty and assumption of risk in a sports setting we considered in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] (*Knight*) and *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724, 34 A.L.R.5th 769] (*Ford*) and to consider a Placer County ordinance relating to skier responsibility. We conclude that, under the applicable common law principles, a skier owes a duty to fellow skiers not to injure them intentionally or to act recklessly, but a skier may not sue another for simple negligence, and we further conclude that the ordinance at issue in this case does not alter this rule. As there is no evidence the defendant skier intentionally injured plaintiff or acted recklessly, the trial court correctly granted summary judgment in his favor.

We affirm the judgment of the Court of Appeal, which reached the same conclusion.

## I. FACTS AND PROCEDURAL HISTORY

The relevant facts are largely undisputed. On April 11, 1991, plaintiff Wilkie Cheong and defendant Drew R. Antablin, longtime friends and experienced skiers, skied together at Alpine Meadows, a resort near Tahoe City in Placer County. They collided, injuring plaintiff. Defendant's declaration states, "I was skiing faster than I was comfortable with, in that I felt I was skiing too fast for existing conditions. In reaction, I turned to my right in an effort to slow down, regain control and stop. As I did so, we collided." Defendant denied intentionally colliding with plaintiff or acting recklessly. In his deposition, plaintiff conceded he did not believe defendant acted recklessly.

Plaintiff sued defendant for general negligence. The superior court granted defendant's motion for summary judgment. The court found that a collision "is an inherent risk of downhill skiing." It stated that under the analysis of *Knight, supra*, 3 Cal.4th 296, "this is a case of 'primary' assumption of risk, which is an absolute bar to plaintiff's recovery." Citing *Ford, supra*, 3 Cal.4th 339, it also found that a Placer County ordinance placing a duty on skiers "to ski in a safe and reasonable manner" did not give plaintiff a valid cause of action. Turning to the undisputed facts, the court found that the accident involved "an active sport, i.e., skiing[,] and the conduct of defendant was neither one of intentionally causing injury nor of conduct so reckless so as to be totally outside the range of ordinary activity involved in the sport."

Plaintiff appealed. He argued that he and defendant were not coparticipants in the sport within the meaning of *Knight* and *Ford*, and that the local

ordinance imposed on defendant a duty that abrogated the assumption of risk defense. The Court of Appeal affirmed.

Citing *O'Donoghue* v. *Bear Mountain Ski Resort* (1994) 30 Cal.App.4th 188, 193 [35 Cal.Rptr.2d 467], and *Danieley* v. *Goldmine Ski Associates, Inc.* (1990) 218 Cal.App.3d 111, 123 [266 Cal.Rptr. 749], the court first found that "Collision with other skiers is considered an inherent risk of the sport." Relying heavily on *Staten* v. *Superior Court* (1996) 45 Cal.App.4th 1628 [53 Cal.Rptr.2d 657], it also found that the assumption of risk doctrine applies to an individual sport such as skiing. Without reference to the local ordinance, it concluded: "Recreational skiing includes certain risky activities, such as avoiding trees and lift towers, negotiating moguls, and avoiding collisions with other skiers. Part of the allure of recreational skiing includes the camaraderie and socializing involved in riding up the lifts and skiing down the mountain runs or trails with friends in mutual enjoyment of nature and of the physical activity and skill required for the sport. We conclude that [plaintiff] and [defendant] . . . were coparticipants in the sport as contemplated by *Knight.* [Defendant] did not act so recklessly as to bring him outside the bounds of the sports activity, and accordingly the defense of primary assumption of the risk operates to bar [plaintiff's] action."

The Court of Appeal also concluded that the local "ordinance did not impose a duty of care upon skiers irrespective of *Knight* v. *Jewett.*" We granted plaintiff's petition to review the issue of the ordinance's effect.

II. DISCUSSION

In *Knight, supra,* 3 Cal.4th 296, the plaintiff sued for injuries the defendant inflicted on her during an informal touch football game. We considered how the adoption of comparative negligence in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] affected the doctrine of assumption of risk in a sports setting. Only three justices signed the plurality opinion in *Knight,* but Justice Mosk wrote a concurring opinion generally agreeing with its analysis. (*Knight, supra,* 3 Cal.4th at pp. 321-322 (conc. opn. of Mosk, J.).) More recently, we unanimously restated the basic principles of *Knight*'s lead opinion as the controlling law. (*Neighbarger* v. *Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 537-538, 541 [34 Cal.Rptr.2d 630, 882 P.2d 347]; see also *Parsons* v. *Crown Disposal Co.* (1997) 15 Cal.4th 456, 479-481 [63 Cal.Rptr.2d 291, 936 P.2d 70].)

■ We distinguished between (1) primary assumption of risk—"those instances in which the assumption of risk doctrine embodies a legal conclusion that there is 'no duty' on the part of the defendant to protect the plaintiff

from a particular risk"—and (2) secondary assumption of risk—"those instances in which the defendant does owe a duty of care to the plaintiff but the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of that duty." (*Knight, supra,* 3 Cal.4th at p. 308.) Primary assumption of risk, when applicable, completely bars the plaintiff's recovery. (*Id.* at pp. 314-315.) The doctrine of secondary assumption of risk, by contrast, "is merged into the comparative fault scheme, and the trier of fact, in apportioning the loss resulting from the injury, may consider the relative responsibility of the parties." (*Id.* at p. 315.) Whether primary or secondary assumption of risk applies "turns on whether, in light of the nature of the sporting activity in which defendant and plaintiff were engaged, defendant's conduct breached a legal duty of care to plaintiff." (*Ibid.*) The test is objective; it "depends on the nature of the sport or activity in question and on the parties' general relationship to the activity" rather than "the particular plaintiff's subjective knowledge and awareness . . . ." (*Id.* at p. 313.)

We noted that "As a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person. (See Civ. Code, § 1714.)" (*Knight, supra,* 3 Cal.4th at p. 315.) This general rule, however, does not apply to coparticipants in a sport, where "conditions or conduct that otherwise might be viewed as dangerous often are an integral part of the sport itself. . . . In this respect, the nature of a sport is highly relevant in defining the duty of care owed by the particular defendant. [¶] Although defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself, . . . defendants generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport. . . . [¶] In some situations, however, the careless conduct of others is treated as an 'inherent risk' of a sport, thus barring recovery by the plaintiff." (*Id.* at pp. 315-316.) Courts should not "hold a sports participant liable to a coparticipant for ordinary careless conduct committed during the sport" because "in the heat of an active sporting event . . . , a participant's normal energetic conduct often includes accidentally careless behavior. . . . [V]igorous participation in such sporting events likely would be chilled if legal liability were to be imposed on a participant on the basis of his or her ordinary careless conduct." (*Id.* at p. 318.)

For these reasons, the general test is "that a participant in an active sport breaches a legal duty of care to other participants—i.e., engages in conduct that properly may subject him or her to financial liability—only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." (*Knight, supra,* 3 Cal.4th at p. 320, fn. omitted.)

Applying this test, the trial court and the Court of Appeal concluded that primary assumption of risk bars this action. Plaintiff's petition for review presented the question whether a Placer County ordinance changes the test. In 1984, the Placer County Board of Supervisors enacted the Skier Responsibility Code of Placer County (Placer Code). (Placer Code, § 12.130 et seq.) It provides in part: "Any individual or group of individuals who engage in the sport of skiing of any type, . . . shall assume and accept the inherent risks of such activities insofar as the risks are reasonably obvious, foreseeable or necessary to the activities." (Placer Code, § 12.132.) " 'Inherent risks of skiing' " expressly include "collision with other skiers and a skier's failure to ski within the skier's own ability." (Placer Code, § 12.131(a).) Plaintiff obviously does not rely on this part of the Placer Code, which seems consistent with *Knight*. Rather, he cites other sections, which state "skier duties." Placer Code section 12.134 provides, as relevant: "Skiers shall have the following duties, a violation of which shall constitute an infraction: [¶] 1. It shall be unlawful for any person to ski faster than is safe and it shall be the duty of all skiers to ski in a safe and reasonable manner, under sufficient control to be able to stop or avoid other skiers or objects." Placer Code section 12.135 provides, as relevant: "Skiers shall have the following duties: [¶] . . . [¶] 3. Skiers shall not overtake any other skier except in such a manner as to avoid contact with the overtaken skier, and shall grant the right of way to the overtaken skier."

Plaintiff argues that the ordinance imposes a higher duty on defendant than *Knight* establishes. We disagree. We recognize that *Knight* was a development of the common law of torts. Within constitutional limits, the Legislature may, if it chooses, modify the common law by statute. (E.g., *Strang* v. *Cabrol* (1984) 37 Cal.3d 720, 724 [209 Cal.Rptr. 347, 691 P.2d 1013] [legislation abrogating prior tort decisions of this court]; *Cory* v. *Shierloh* (1981) 29 Cal.3d 430, 439 [174 Cal.Rptr. 500, 629 P.2d 8] ["It is well settled that the Legislature possesses a broad authority both to establish and to abolish tort causes of action."].) Whether a *local* ordinance such as the Placer Code can modify *Knight* is less clear. We need not decide this question here because we conclude that the ordinance does not modify the *Knight* standard even if we assume it could.

The ordinance evinces no clear intent to modify common law assumption of risk principles. It does state various "skier duties," but in context these duties do not govern tort liability between skiers. Rather than stating a skier may sue a fellow skier for violating the specified duties, the ordinance expressly provides that a skier "shall assume and accept the inherent risks of such activities insofar as the risks are reasonably obvious, foreseeable or necessary to the activities" (Placer Code, § 12.132), and it defines these

inherent risks to include "collision with other skiers and a skier's failure to ski within the skier's own ability." (Placer Code, § 12.131(a).) The ordinance was adopted in 1984, several years before we decided *Knight, supra,* 3 Cal.4th 296, but it preserves common law principles of assumption of risk. Plaintiff argues the assumption of risk provisions of the Placer Code were intended to protect ski area operators, and not skiers, from liability for injuries due to negligent skiing. Nothing in the language of the ordinance, however, limits the scope of those provisions in this fashion. The language that skiers assume the risks inherent in skiing, including the risk of collision, is unqualified. It provides no basis on which to limit its application only to ski area operators, or to assume an intent to modify the common law rules of assumption of the risk. Accordingly, we conclude the ordinance, by itself, does not give plaintiff a cause of action.

Plaintiff also argues that Evidence Code section 669, subdivision (a) (section 669(a)), provides him a cause of action. Section 669(a) states: "The failure of a person to exercise due care is presumed if:

"(1) He violated a statute, ordinance, or regulation of a public entity;

"(2) The violation proximately caused death or injury to person or property;

"(3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and

"(4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."

Citing the four elements of section 669(a), plaintiff contends (1) defendant violated an ordinance, specifically the Placer Code; (2) the violation caused his injury; (3) the ordinance was designed to prevent his injury; and (4) he was one of the class the ordinance was intended to protect. Relying heavily on *Ford, supra,* 3 Cal.4th 339, he argues "that if a plaintiff who is a participant in an active sport is also a member of the class of persons intended to be protected by a statute, then Evidence Code § 669 will in turn transform the statute into a legal duty of due care upon the defendant, thus abrogating the assumption of the risk defense."

In *Ford,* the plaintiff was injured when he struck a tree limb extending from a riverbank in a channel of the Sacramento River Delta while water-skiing barefoot and backward. He sued the driver of the boat that towed him.

Harbors and Navigation Code section 658, subdivision (d), prohibits ski boat drivers from operating a boat so as to cause a skier to collide with an object. (See *Ford, supra,* 3 Cal.4th at p. 346.) The plaintiff argued the defendant had violated that statute, and, "under the provisions of Evidence Code section 669, such a violation establishes a rebuttable presumption that defendant breached his duty of care to plaintiff." (*Ibid.*)

This court disagreed. The lead opinion, speaking for one justice, concluded Harbors and Navigation Code "section 658, subdivision (d), was intended to safeguard only the lives and property of third persons. Plaintiff does not fall within this protected class. (Evid. Code, § 669.) Accordingly, the statute does not impose a duty of care on defendant that is otherwise precluded under the principles set forth in *Knight, supra, ante,* at page 296." (*Ford, supra,* 3 Cal.4th at p. 350 (opn. of Arabian, J.).) Justice Kennard, joined by Justices Panelli and Baxter, also concluded that the statute "does not preclude application of the assumption of risk defense in this case," but for different reasons based upon her dissenting opinion in *Knight.* (*Ford, supra,* 3 Cal.4th at p. 363.) Then Associate Justice George, joined by Chief Justice Lucas, and, in a separate opinion, Justice Mosk, concluded that Harbors and Navigation Code section 658 did impose a higher duty on the defendant than *Knight* otherwise would have, and therefore the trial court should not have granted summary judgment in favor of the defendant. (*Knight, supra,* 3 Cal.4th at pp. 364-369 (conc. & dis. opn. of George, J.), 369 (dis. opn. of Mosk, J.).)

Justice Arabian's opinion in *Ford* implicitly assumed, and the opinions of Justice George, joined by Chief Justice Lucas, and Justice Mosk expressly concluded, that if the four elements of section 669(a) were satisfied, that statute creates tort liability between coparticipants in an active sport despite the *Knight* doctrine of primary assumption of risk. As the concurring opinion that I have filed in this case indicates, a number of the justices who have signed this majority opinion question whether this conclusion is correct. We need not resolve the point here, however, because, even if that conclusion is correct, the elements of section 669(a) have not been met in this case. Plaintiff has not demonstrated that he is one of the class of persons the ordinance was intended to protect. By specifically stating that skiers assume the inherent risks of skiing, including the risk of collision and the risk that others will fail to ski within their own ability, the ordinance makes clear that petitioner, who was injured in a collision with a fellow skier, was not "one of the class of persons for whose protection the . . . ordinance . . . was adopted." (§ 669(a).) Accordingly section 669(a) does not aid plaintiff's position.

"By eliminating liability for unintended accidents, the doctrine [of primary assumption of the risk] ensures that the fervor of athletic competition

will not be chilled by the constant threat of litigation from every misstep, sharp turn and sudden stop." (*Stimson* v. *Carlson* (1992) 11 Cal.App.4th 1201, 1206 [14 Cal.Rptr.2d 670].) These words apply fully to skiing. The Placer Code itself incorporated the doctrine of assumption of risk. Even if defendant's misstep in this case violated that code, the violation would not create tort liability between skiers.

### III. CONCLUSION

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Werdegar, J., and Brown, J., concurred.

**MOSK, J.**—I concur in the result.

Participants in an active sport ordinarily have no duty to coparticipants "to refrain from the normal activities of the sport, however unreasonable it would be to inflict such activities on nonparticipants." (4 Harper et al., The Law of Torts (2d ed. 1986) § 21.3, p. 223.) That is my understanding of the rule adopted in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696]. As I explained in my concurring and dissenting opinion in *Knight*, however, I would discard the confusing, and unnecessary, terminology of "primary assumption of risk" and analyze the issue as a question of "duty." (*Id.* at pp. 321-322 (conc. and dis. opn. of Mosk, J.).)

The no-duty rule of *Knight* applies unless it is displaced. For example, the Legislature could enact a statute providing that a coparticipant in a particular active sport owes a duty of care not to engage in particular conduct that might otherwise be considered one of the "normal activities of the sport." I agree with the Court of Appeal that the ordinance here—the Skier Responsibility Code of Placer County—does not purport to displace the no-duty rule of *Knight*. On the contrary, it embraces the rule: recreational downhill skiers "assume and accept the inherent risks of [skiing]" (Placer Code, § 12.132), including "collision with other skiers and a skier's failure to ski within the skier's own ability." (Placer Code, § 12.131(a).), Accordingly, plaintiff does not have a cause of action against defendant on the facts presented.

I am not persuaded that the same is true of the statute at issue in *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724, 34 A.L.R.5th 769]. Harbors and Navigation Code section 658, subdivision (d), prohibits a person towing another person on water skis from operating the vessel in such a way as to cause the skier to collide with any object or person. I understand it to prescribe the duty of care applicable to a ski boat driver vis-à-vis a

person he or she tows. (*Ford* v. *Gouin*, *supra*, 3 Cal.4th at p. 365 (conc. and dis. opn. of George, J.); *id.* at p. 369 (dis. opn. of Mosk, J.).) It would displace the no-duty rule of *Knight*, giving rise to tort liability for negligence. Under the circumstances described in *Ford*, "it would follow, under Evidence Code section 669, that defendant violated his legal duty of care to plaintiff, unless the trier of fact also were to find defendant had proved that, in operating the vessel, he did 'what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law . . . .'" (*Ford* v. *Gouin*, *supra*, 3 Cal.4th at p. 368 (conc. and dis. opn. of George, J.); see also *id.* at p. 369 (dis. opn. of Mosk, J.).)[1]

Finally, I question the suggestion that a local ordinance, as opposed to a rule of statewide application, may not establish a local duty giving rise to tort liability. Again, that depends on whether the particular ordinance or statute displaces the no-duty rule of *Knight*. The dispositive question is whether it is the type of safety enactment that establishes a duty of "due care" that would otherwise not exist, under *Knight*.

**KENNARD, J.**—I concur in the result.

In *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] (*Knight*), a plurality comprised of three justices (the *Knight* plurality) announced its intention to abandon the traditional doctrine of assumption of risk as an affirmative defense in a negligence action. For those situations in which assumption of risk is not merely a variant of contributory negligence (referred to by the *Knight* plurality as "secondary" assumption of risk), the *Knight* plurality proposed a new doctrine of "primary" assumption of risk that would in certain circumstances modify or reduce the duty of care that one person owes to another. (*Id.* at pp. 305-315 (lead opn. of George, J., joined by Lucas, C. J., and Arabian, J.).) In the context of sports activities, "primary" assumption of risk would operate to excuse sports participants

---

[1] Justice Chin's separate concurring opinion appears to conclude that the presumption of lack of "due care" under Evidence Code section 669 does not affect the *Knight* rule because "primary assumption of risk" eliminates any duty not to engage in conduct amounting to "simple negligence," as opposed to conduct that is "intentional" or "reckless." I do not agree. As I understand our holding in *Knight*, a coparticipant who engages in a sport according to the rules is not "negligent" at all, even if his conduct is "intentional." "[P]articipants breach no duty to other participants in playing the sport normally, although the same acts (e.g., tackling someone, or hitting a baseball in his direction) would be negligent, or worse, if they endangered a nonparticipant." (4 Harper et al., The Law of Torts, *supra*, § 21.5, p. 238, fn. 17.) If that rule is displaced by a statute or ordinance, a coparticipant who engaged in conduct amounting even to "simple negligence" would indeed violate his legal duty of care, under Evidence Code section 669, unless he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances.

from the usual duty under negligence law of acting with due care, leaving them with only the duty to refrain from conduct that is reckless or intentionally harmful. (*Id.* at pp. 315-321.) In *Knight*'s companion case, *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724, 34 A.L.R.5th 769] (*Ford*), these same three justices concluded that a statutory obligation could, by operation of Evidence Code section 669,[1] reinstate the duty to act with due care that they had just proposed to eliminate in *Knight.* (*Ford, supra,* at pp. 342-351 (lead opn. of Arabian, J.) and pp. 364-369 (conc. and dis. opn. of George, J., joined by Lucas, C. J.).)

In both *Knight* and *Ford,* I disagreed with the proposal to discard the traditional doctrine of voluntary assumption of risk. Instead, in both cases I analyzed the issues by applying that doctrine, which holds each person accountable for the normal and expected consequences of a freely chosen course of conduct. (*Knight, supra,* 3 Cal.4th at pp. 324-338 (dis. opn. of Kennard, J.); *Ford, supra,* 3 Cal.4th at pp. 351-364 (conc. opn. of Kennard, J., joined by Panelli and Baxter, JJ.).)

This case has given rise to five separate opinions, including a concurring opinion by the author of the majority opinion. The only point on which a majority of this court can agree is that a Placer County skiing ordinance that "preserves common law principles of assumption of risk" (maj. opn., *ante,* at p. 1070) does not impose a duty on skiers to avoid harm to other skiers. But the conflicting concurring opinions expose the inherent incongruity between the plurality's proposal in *Knight* to eliminate a sports participant's duty of due care and its suggestion in the companion case of *Ford* that a statutory obligation read together with Evidence Code section 669 could displace *Knight*'s "no-duty-of-due-care" rule. Under the plurality view in *Knight,* a sports participant would have no duty to exercise due care toward other sports participants. But Evidence Code section 669, relied on by that same plurality in *Ford,* creates only a presumption that a person who has violated a statute or ordinance has failed to exercise due care. Thus, if one accepts (as I do not) the soundness of the *Knight* plurality view that sports participants have no duty to exercise due care, then, as Justice Chin's concurring opinion in this case points out, it logically follows that a statutory presumption of lack of due care cannot result in liability for a sports participant. (See conc. opn. of Chin, J., *post,* at p. 1079.)

---

[1]Evidence Code section 669 provides: "(a) The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."

The authoring justice of the *Knight* plurality, apparently unwilling to hold that a legislatively imposed duty is irrelevant to tort liability, joins Justice Werdegar's concurring opinion in this case. (See conc. opn. of Werdegar, J., joined by George, C. J., *post*.) That opinion attempts to salvage *Ford*'s exception to *Knight*'s "no-duty-of-due-care" rule, but can do so only by adopting a construction of the term "due care" as used in Evidence Code section 669 that is inconsistent with its traditional meaning of acting without negligence, that is, acting as a reasonable person would in like and similar circumstances. (See Prosser & Keeton on Torts (5th ed. 1984) § 32, p. 175.) Under Justice Werdegar's construction, "due care" means whatever conduct is required by the applicable statute regardless of whether the underlying common law standard of liability is negligence, recklessness, or intentional harmfulness. (Conc. opn. of Werdegar, J., *post*, at pp. 1077-1078; see also conc. opn. of Mosk, J., *ante*, at p. 1073, fn. 1.)

This case illustrates the extent to which the *Knight* plurality's effort to abandon the traditional doctrine of assumption of risk is tearing at the fabric of tort law. Those who accept the underlying premise of the *Knight* plurality either must conclude that legislatively created duties have no bearing on the tort liability of sports participants or must distort the negligence concept of due care to encompass reckless and intentional conduct.

The majority opinion in this case characterizes as "controlling law" the view expressed by the *Knight* plurality. (Maj. opn., *ante*, at p. 1067.) But as I pointed out earlier, that view was embraced by only three justices in *Knight* and in its companion case, *Ford*. Although later decisions by this court contain statements reiterating what the three-justice plurality had said in *Knight* (see *Parsons* v. *Crown Disposal Co.* (1997) 15 Cal.4th 456, 479-481 [63 Cal.Rptr.2d 291, 936 P.2d 70]; *Neighbarger* v. *Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 537-538 [34 Cal.Rptr.2d 630, 882 P.2d 347]), those statements were dicta because they were not essential to the court's reasoning, as I noted in my dissent in *Parsons* at pages 503-504, footnote 4. I remain unpersuaded, for the reasons given in my dissenting opinion in *Knight,* of the soundness of the *Knight* plurality view. Therefore, I would resolve the issue here under the traditional doctrine of voluntary assumption of risk, as I did in *Knight* and *Ford*.

Applying that doctrine, I would analyze this case as follows: Defendant Drew R. Antablin collided with plaintiff Wilkie Cheong while the two law partners were skiing together at the Alpine Meadows ski resort in Placer County. Collisions between skiers are so much an expected risk of downhill skiing that Placer County has enacted an ordinance listing it as one of the "[i]nherent risks of skiing." (Skier Responsibility Code of Placer County,

§ 12.131(a).) The transcript excerpts from plaintiff's deposition that defendant submitted in support of his motion for summary judgment leave no doubt that plaintiff's choice to confront this well-known risk of downhill skiing was a freely made and informed one. Plaintiff had been a downhill skier for over 20 years and had skied at Alpine Meadows more than 50 times. This undisputed evidence amply established the defense of voluntary assumption of risk to plaintiff's cause of action for negligence, thus entitling defendant to summary judgment.

**WERDEGAR J., Concurring.**—I have joined the majority opinion because I agree generally with its reasoning and concur in the result. The majority correctly observes in order to decide this case we "need not resolve" (maj. opn., *ante*, at p. 1071) whether or how Evidence Code section 669 (section 669) may affect a plaintiff's burden of proof in tort litigation generally, or revisit the complex of related issues that led to our fragmented decision in *Ford* v. *Gouin* (1952) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724, 34 A.L.R.5th 769] (*Ford*). Nevertheless, Justice Chin writes separately, suggesting plaintiff's claim also may be rejected on the ground section 669 "does not affect the assumption of risk principles established in *Knight* [v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696]]" (conc. opn. of Chin, J., *post*, at p. 1078). In my view, that suggestion unjustifiably departs from the plain language of section 669 and does not accord with long-standing precedent respecting the negligence per se doctrine.

Justice Chin implicitly argues that section 669 may never bear on a plaintiff's burden of proof as to the existence *vel non* of a tort duty (see conc. opn. of Chin, J., *post*, at p. 1079 [noting "[t]he word 'duty' does not appear in the statute," and opining section 669 "states a rule of evidence only—a presumption of the failure to use 'due care' "]) and suggests "due care" therein invariably means *ordinary care* (see *ibid.* [defining "the general duty to use 'due care' " as the duty to "not act negligently"]).

I am not persuaded. Section 669 codifies the common law doctrine of negligence per se. (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 164 [95 Cal.Rptr. 623, 486 P.2d 151]; see generally, 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 819, pp. 171-173.) That doctrine has long been understood to affect a plaintiff's burden of proof as to the existence *vel non* of a tort duty, as well as the adequacy of the defendant's conduct. (See, e.g., *Veseley* v. *Sager, supra*, 5 Cal.3d at p. 164 [discussing section 669 and stating "[a] duty of care, and the attendant standard of conduct required of a reasonable man, may of course be found in a legislative enactment which does not provide for civil liability"]; *Richards* v. *Stanley* (1954) 43 Cal.2d 60, 63 [271 P.2d 23] ["[g]iven a statute prohibiting the leaving of the key in an unattended vehicle

on the public street, it could reasonably be contended that the Legislature had established a duty on the part of motorists to protect persons on the streets from any damage caused by thieves driving stolen automobiles"]; *Satterlee* v. *Orange Glenn School Dist.* (1947) 29 Cal.2d 581, 595 [177 P.2d 279] (conc. opn. of Traynor, J.) [noting the "standard [expressed in a criminal statute] determines civil liability, not because the Legislature has so provided, but because the courts recognize that, with respect to the conduct in question, the duties of the parties are determined by the statute"].)

A plain reading of section 669 suggests the presumption arising thereunder is one of "failure of a person to exercise due care" (§ 669, subd. (a)), i.e., the care that is "due" in the context governed by the relevant "statute, ordinance, or regulation" (*id.,* subd. (a)(1)). Justice Chin apparently sees in section 669's "location in the Evidence Code" (conc. opn. of Chin, J., *post,* at p. 1079) support for departing from the statute's plain language, so as to construe "due care" as "ordinary care," but I do not. Mere "location of an enactment in one particular code as opposed to another is 'generally among the least helpful indicia of legislative intent.' " (*People* v. *Andrade* (1983) 141 Cal.App.3d Supp. 36, 39 [190 Cal.Rptr. 738], quoting *Dunlop* v. *Tremayne* (1965) 62 Cal.2d 427, 429, fn. 2 [42 Cal.Rptr. 438, 398 P.2d 774, 17 A.L.R.3d 368].)

Nor does citation to a terse Law Revision Commission comment persuade me the presumption arising under section 669 " 'is one of simple negligence only' " (conc. opn. of Chin, J., *post,* at p. 1079, quoting Cal. Law Revision Com. com., 29B pt. 2 West's Ann. Evid. Code (1995 ed.) foll. § 669, p. 264), irrespective of the context. The commission's comment is not explained, and its sole support, a 1931 Court of Appeal opinion, held only that the particular jury instructions in that case, including one stating, "the violation of the speed statute was simple negligence" and "that alone was not sufficient to constitute gross negligence," were as a whole fair to the defendant. (*Taylor* v. *Cockrell* (1931) 116 Cal.App. 596, 599 [3 P.2d 16].) In the same comment, when describing the effect of the statutory presumption, the commission states, "if it is established that a person violated a statute under the conditions specified in [the statute], the opponent of the presumption is required to prove . . . that the violation of the statute was reasonable and justifiable under the circumstances." (Cal. Law Revision Com. com., 29B pt. 2 West's Ann. Evid. Code, *supra,* foll. § 669, p. 264.) In this respect, therefore, the comment seems to suggest, as the plaintiff here argued, that if a plaintiff who is a participant in an active sport is also a member of the class of persons intended to be protected by a statute, then section 669 may transform an appropriate statute into a legal duty of due care upon the defendant.

The construction of "due care" most obviously in accord with our previous pronouncements would seem to be not ordinary care, but *the care to comply with the applicable statute*, i.e., when plaintiff proves defendant violated an applicable statute and section 669's other requirements are satisfied, a presumption arises satisfying plaintiff's burden of proving *both* (a) that defendant owed plaintiff a tort *duty* to exercise care when engaging in the type of conduct underlying the violation and (b) that defendant's conduct *breached* this duty. (See *Satterlee* v. *Orange Glenn School Dist.*, *supra*, 29 Cal.2d at p. 596 ["Where a statute defines the standard of care . . . no other measure may be applied in determining whether a person has carried out the duty of care imposed by law."].)

For the foregoing reasons, as well as for the reasons stated in the majority opinion, I have joined the majority in rejecting plaintiff's claim on the grounds it is barred by our decision in *Knight*, rather than adopt the approach suggested in Justice Chin's concurring opinion.

George, C. J., concurred.

**CHIN, J.**—Obviously, I concur in the majority opinion I have authored. I write separately to state another reason to reject plaintiff's argument under Evidence Code section 669, subdivision (a) (section 669(a)). The majority opinion does not decide whether, assuming the four elements of section 669(a) are satisfied, that statute creates tort liability between coparticipants in an active sport notwithstanding our decision in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] (*Knight*). (Maj. opn., *ante*, at p. 1071.) I would also hold that section 669(a) does not affect the assumption of risk principles established in *Knight*. *Knight* applies to this case, not section 669(a).

As relevant, section 669(a) states, "The failure of a person to exercise due care is presumed if" four requirements are met. This statute, however, does not establish tort liability. Rather, it merely "codifie[s]" the rule that "a presumption of *negligence* arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute." (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 164 [95 Cal.Rptr. 623, 486 P.2d 151], italics added; see also *Ramirez* v. *Plough, Inc.* (1993) 6 Cal.4th 539, 547 [25 Cal.Rptr.2d 97, 863 P.2d 167, 27 A.L.R.5th 899] [citing section 669 for the proposition that "proof of the defendant's violation of a statutory standard of conduct raises a presumption of negligence"].) Under *Knight*, however, a presumption of negligence is insufficient to make a participant in an active sport liable in tort to another participant.

As indicated by its location in the Evidence Code, section 669(a) states a rule of evidence only—a presumption of the failure to use "due care"—not a rule of tort liability. The word "duty" does not appear in the statute. *Knight* held that a participant in an active sport may sue a fellow participant only for reckless behavior or the intentional infliction of injury, and not for mere negligence. (*Knight*, *supra*, 3 Cal.4th at p. 320.) By establishing only a standard of negligence, section 669(a) does not apply to cases that *Knight* governs. The Law Revision Commission Comment to section 669 states, "If the conditions listed in subdivision (a) are established, a presumption of negligence arises . . . . The presumption is one of simple negligence only, not gross negligence." (Cal. Law Revision Com. com., 29B pt. 2 West's Ann. Evid. Code (1995 ed.) foll. § 669, p. 264.) Because, "As a general rule, persons have a duty to use *due care* to avoid injury to others, and may be held liable if their careless conduct injures another person" (*Knight*, *supra*, 3 Cal.4th at p. 315, italics added, citing Civ. Code, § 1714), as a general rule a presumption of the failure to use "*due care*" (Evid. Code, § 669, italics added) is also a presumption of a breach of duty giving rise to tort liability. But the basic teaching of *Knight* is that participants in an active sport have no duty to avoid merely negligent conduct.

Primary assumption of risk involves " ' "a *reduction* of defendant's duty of care." ' " (*Knight*, *supra*, 3 Cal.4th at p. 306, quoting *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 825 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], in turn quoting *Grey* v. *Fibreboard Paper Products Co.* (1966) 65 Cal.2d 240, 246 [53 Cal.Rptr. 545, 418 P.2d 153], italics added.) Specifically, primary assumption of risk reduces the general duty to use "due care" (or not act negligently) to a duty not to act intentionally or recklessly. If, as the Law Revision Commission Comment to section 669 states, the section's presumption is of simple negligence only, and not of gross negligence, it is certainly not a presumption of intentional or reckless conduct. The *Knight* standard of primary assumption of risk still applies even if the violation of an ordinance or statute, combined with Evidence Code section 669, creates a presumption of negligence.

For these reasons, I would reject plaintiff's argument under section 669(a) at the outset. That section does not, by itself, modify the *Knight* rule. The Legislature clearly has the power to modify *Knight*, but whether a particular statute has done so must be determined from that statute itself, not merely by determining whether the four elements of section 669(a) are met.

The majority opinion also does not decide whether a *local* ordinance such as the Skier Responsibility Code of Placer County may modify *Knight*. (Maj. opn., *ante*, at p. 1069.) *Knight* established a common law rule for the entire

state. Arguably, the same standard of duty should apply statewide, and local governmental entities such as cities and counties should not be allowed to regulate questions of duty. As amicus curiae California Ski Industry Association notes, acceptance of plaintiff's argument "would result in the inconsistent application of tort duties in different counties" so "that identical behavior by skiers at separate resorts would have dramatically different consequences." I reserve judgment on that question until we are faced with a local ordinance that, unlike the one here, does attempt to modify the common law of torts.

Baxter, J., and Brown, J., concurred.