Hillsborough-southern judicial district
No. 2008-235

## Kirsten Werne

### v.

### Executive Women's Golf Association & a.

Argued: January 9, 2009
Opinion Issued: February 19, 2009

*William Aivalikles*, of Nashua, by brief and orally, for the plaintiff.

*Morrison Mahoney LLP*, of Manchester (*Ralph Suozzo* on the brief, and *William J. Flanagan* orally), for defendant Executive Women's Golf Association.

*Getman, Stacey, Schulthess & Steere, P.A.*, of Bedford (*Christopher J. Poulin* on the brief and orally), for defendant Executive Women's Golf Association of Southern New Hampshire.

*Downs Rachlin Martin PLLC*, of Littleton (*Kate Strickland* on the brief and orally), for defendant Alpine Ridge Golf, LLC d/b/a Alpine Ridge Golf Club.

*Desmarais, Ewing & Johnston, PLLC*, of Manchester (*Fred J. Desmarais* and *Emily M. Doherty* on the brief, and *Mr. Desmarais* orally), for defendant Deb Armfield.

BRODERICK, C.J. The plaintiff, Kirsten Werne, appeals from an order of the Superior Court (*Groff*, J.) granting summary judgment to the defendants, Executive Women's Golf Association, Executive Women's Golf Association of Southern New Hampshire, Alpine Ridge Golf, LLC and Deb Armfield. We affirm.

The trial court found or the record supports the following facts. On September 5, 2003, Werne was struck by a golf ball while participating in "Annual Nite Lite Outing" at Alpine Ridge Golf Club (Alpine Ridge) in Hollis, a golf course owned and operated by Alpine Ridge Golf, LLC. The event was an evening of glow golf sponsored by the Executive Women's Golf Association of Southern New Hampshire, a chapter of the Executive Women's Golf Association. Glow golf involves golfing at night while using

glowing golf balls and other glowing devices, such as tiki torches and glow necklaces, to illuminate the golf course and the participants. Prior to this event, Alpine Ridge had offered glow golf on Friday evenings on a regular basis to organizations and the general public for at least two years. The event began once darkness fell.

At the event, Werne played in a group of four, which included Deb Armfield and two other women. Participants were given glowing golf balls and they wore glow jewelry. Lighting on the course was minimal, and the longest hole was 110 yards. Alpine Ridge placed glow sticks on each side of the tees and on the flag on each green. Tiki torches were also placed near the green at some of the holes. The players generally agree the course was dark.

The players consumed some beer over the course of the evening, but Werne does not allege and the record does not indicate that anyone was impaired. In the course of their round, Armfield made a shot which hit Werne in the head, causing her to suffer a concussion and permanent brain damage.

Werne brought a claim for negligence against all four defendants. Each defendant filed a special plea and brief statement, arguing, among other things, that it did not owe Werne a duty and that Werne's claims were barred by her assumption of the risk and her own comparative fault.

The defendants then filed motions for summary judgment that the trial court granted. Relying upon *Allen v. Dover Co-Recreational Softball League*, 148 N.H. 407, 418 (2002), the trial court reasoned that "the defendants can only be held liable . . . for reckless or intentional injurious conduct outside the range of ordinary activity involved in the sport and for creating or allowing unreasonable risks beyond those risks inherent within the sport of glow golf." (Quotations omitted.) The court concluded that Werne had failed to allege facts showing that the conduct of any defendant unreasonably increased the inherent risks of the game, and ruled that they had not breached the applicable duty of care owed to her under the *Allen* standard.

In reviewing a trial court's summary judgment ruling, we consider the affidavits and other evidence and all inferences properly drawn therefrom in the light most favorable to the non-moving party. *Cohoon v. IDM Software*, 153 N.H. 1, 4 (2005). If our review of the evidence fails to reveal any genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. *Orr v. Goodwin*, 157 N.H. 511, 514 (2008). However, we review the trial court's application of the law to the facts *de novo. Id.*

Werne first argues that the trial court "fail[ed] to apply the common law duties that are owed by land owners to members of the public." Specifically,

she contends that Alpine Ridge cannot assert the defense of primary implied assumption of the risk because "[t]he assumption of the risk doctrine is not applicable to tort claims against owners and occupiers of land." We disagree.

■ Werne correctly observes in her brief that owners and occupiers of land owe plaintiffs a duty of reasonable care under all the circumstances in the maintenance and operation of their property. *See, e.g., Simpson v. Wal-Mart Stores*, 144 N.H. 571, 574 (1999). As a land owner operating a sports facility, Alpine Ridge Golf, LLC owed Werne the same duty of reasonable care. However, as the trial court noted, courts have recognized that participating in a sport "gives rise to commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation." *Allen*, 148 N.H. at 417 (quotation omitted).

■ In *Allen*, the plaintiff was struck by an errantly thrown softball while running to first base. A land owner, the owner of the softball field, was one of the six defendants in that case. We held that the duty owed by the owner of the softball field was to "create only [the] risks that are normal or ordinary to the sport or that would be created by a reasonable person of ordinary prudence under the circumstances." *Id.* at 422 (quotations omitted). Thus, in ordinary negligence terms, a land owner operating a sports facility "who creates only [the] risks that are normal or ordinary to the sport [at issue] acts as a reasonable person of ordinary prudence under the circumstances." *Id.* at 418 (quotation omitted). *Allen* does not represent a departure from the land owner's general duty to exercise reasonable care under the circumstances; it simply addresses the duty with regard to the circumstances common to land owners operating a sports facility. Accordingly, by applying *Allen* to the facts of this case, the trial court correctly identified the common law duties land owners owe to members of the public.

■ Similarly, Werne's argument that the assumption of the risk doctrine is not applicable to tort claims against owners and occupiers of land misapprehends the relationship between the primary implied assumption of risk doctrine and the common law duties of land owners, including those of land owners operating sports facilities. In *Allen*, we observed that the doctrine of primary implied assumption of the risk applies when a plaintiff voluntarily and reasonably enters into some relation with a defendant which the plaintiff reasonably knows involves certain obvious risks such that a defendant has no duty to protect the plaintiff against injuries that may be caused by those risks. *Id.* at 414. In *Allen*, we held that being struck in the head by an errantly thrown ball was part of the risk inherent in the

game, and that the defendants, including the owner of the field, were not liable because they had not unreasonably increased that risk or unreasonably created or countenanced risks outside the range of ordinary activity involved in the sport. *Id.* at 417-18, 420-23.

We applied primary implied assumption of the risk in *Allen* to bar the plaintiff's claim against a land owner. Werne does not argue that we should overturn that case, and nothing in our case law suggests that primary implied assumption of the risk would otherwise be unavailable as a defense against liability in this case.

■ Werne next argues that the trial court should have barred all four defendants from asserting the defense of primary implied assumption of the risk because they pled that Werne was comparatively at fault in their special pleas and brief statements. Her argument suggests that because the defendants initially pled that the plaintiff was comparatively at fault, they admit that they owed her a duty, and therefore must be barred from arguing that no duty was owed. Superior Court Rule 28 requires a defendant to file a special plea and brief statement. Failure to plead any potential defense amounts to a waiver of that defense. The rule does not provide that a defendant is bound by those defenses. *See* SUPER. CT. R. 28. Moreover, inconsistent defenses may be pled. *LePage v. Company*, 97 N.H. 46, 50 (1951). Accordingly, the defendants were not limited to asserting comparative fault to the exclusion of other defenses.

Next, Werne contends that glow golf is not a distinct sport from golf, and that the trial court erred in premising its decision on whether the defendants' conduct unreasonably increased the inherent risks of the sport of glow golf as opposed to golf generally. We disagree.

■■ To determine the appropriate standard of care to be applied to participants, sponsors and organizers of recreational athletics, we consider: (1) the nature of the sport involved; (2) the type of contest; *i.e.*, amateur, high school, little league, pick-up, etc.; (3) the ages, physical characteristics and skills of the participants; (4) the type of equipment involved; and (5) the rules, customs and practices of the sport, including the types of contact, and the level of violence generally accepted. *Allen*, 148 N.H. at 418. The sign-up sheet announcing Annual Nite Lite Outing provided: "Come play around in the dark! Yes, the dark!" Although the rules of glow golf appear to be essentially the same as those of golf, it is the custom to play it after dark. The record indicates that participants of any age or skill level are allowed to play the game. Moreover, record testimony indicates that glow golf has its own equipment, distinct from that of golf, and that it is marketed at

trade shows and in industry magazines. In considering these factors, we find no error in the trial court's characterization of the sport at issue as glow golf as opposed to golf.

Werne further argues that the trial court erred in granting the defendants' motions for summary judgment because their conduct unreasonably increased the risks inherent in the game. We disagree. All parties agree that being hit by an errant golf ball is a risk inherent in the game of glow golf. Werne did not allege any facts to show that the defendants unreasonably increased this inherent risk by their conduct. In so concluding, we apply the five considerations from *Allen* that inform the appropriate standard of care each defendant owed to Werne. *See id.* at 418.

Werne alleges that Alpine Ridge breached a duty to provide safe premises due to inadequate lighting. However, Werne's own deposition shows that the dark conditions were an integral part of the game. During her deposition she was asked why she did not stop playing if she knew it was "really, really dark," to which she replied: "That was the point. It was dark. . . . [T]hey made us wait until it was dark."

She further argues that lack of light prevented Armfield from being able to see where she was hitting the ball. One of Werne's experts opined: "[T]he only logical explanation . . . is that Ms. Armfield did not know where she was hitting the ball at the time of the injury." However, the expert's report does not conclude, and Werne does not argue, that the darkness or Armfield's alleged inability to see unreasonably increased the inherent risk that Werne would be struck by a shot while playing in the dark.

*Allen* provides that we must consider the nature of the sport involved and its rules, customs and practices in determining the appropriate standard of care. *Id.* The record shows that glow golf is played in the dark. Therefore, Werne's claims of negligence related to darkness or the players' inability to see fail to establish that these conditions unreasonably increased the inherent risk that Werne would be struck by a ball.

We reach the same result for each of Werne's factual allegations with regard to the conduct of the Executive Women's Golf Association and the Executive Women's Golf Association of Southern New Hampshire, including, among other things, failing to monitor, screen, or instruct players. Although the conditions under which the game was played may not have been the safest possible conditions, Werne failed to demonstrate that any conduct unreasonably increased the inherent risk that Werne could be struck by a ball while playing glow golf.

Werne points to several cases with similar facts from other jurisdictions that purportedly impose a different standard of care for defendants and urges us to adopt that approach. We decline to do so. *Allen* provides the

governing standard in this case. The defendants may only be held liable if their conduct unreasonably increased the risks inherent in the game of glow golf or if they unreasonably created or countenanced risks outside the range of ordinary activity involved in the sport. *See id.* at 417-18, 420-23.

Finally, Werne argues that the trial court failed to apply the proper standard in ruling upon the defendants' motions for summary judgment. Specifically, she claims the trial court made findings of fact unsupported by the evidence and failed to draw all reasonable inferences in her favor. Werne alleges that "[t]here was sufficient evidence to raise an arguable issue that Armfield was impaired due to her [alcohol] consum[ption]." She further claimed that "[t]he evidence did raise the inference that [Alpine Ridge's] allowing the consumption of alcohol while on the golf course [in violation of RSA 179:27 (Supp. 2008)] may have increased the inherent risk of golf."

██ We find these claims to be contrary to the evidence in the record and the applicable law. In particular, Werne admitted in her deposition that she did not know how many beers any player had consumed before she was struck by the ball. None of the other players' depositions indicated that any player was impaired or that alcohol consumption had anything to do with what occurred. Moreover, RSA 179:27 does not prohibit consumption of alcohol on a golf course. Golf courses can obtain liquor licenses that allow consumption of alcohol in locations where the commission approves service, including on a golf course. *See* RSA 178:22, V(u)-(v), :24 (Supp. 2008). In addition, Werne presented no evidence to establish that a reasonable golf club owner would not permit alcohol consumption while playing glow golf or that consuming alcohol would unreasonably increase the inherent risk of being struck by a ball while playing glow golf.

Werne has failed to demonstrate reversible error, and, accordingly, we affirm the superior court order granting the defendants' motions for summary judgment.

*Affirmed.*

DALIANIS and DUGGAN, JJ., concurred.