Rockingham
No. 2010-007

PAUL F. SANCHEZ, III

v.

CANDIA WOODS GOLF LINKS

Argued: September 15, 2010
Opinion Issued: November 24, 2010

*Backus, Meyer & Branch, LLP*, of Manchester (*Barry M. Scotch* on the brief and orally), for the plaintiff.

*Wiggin & Nourie, P.A.*, of Manchester (*Doreen F. Connor* and *Gary M. Burt* on the brief, and *Mr. Burt* orally), for the defendant.

CONBOY, J. The plaintiff, Paul F. Sanchez, III, appeals an order of the Superior Court (*McHugh*, J.) granting summary judgment in favor of the defendant, Candia Woods Golf Links (Candia Woods). We affirm.

The following facts are undisputed. On September 4, 2006, Sanchez was injured while playing golf at Candia Woods. He had played golf several times a year for over twenty-five years and had previously played the Candia Woods course several times. Prior to Sanchez's injury, Candia Woods installed yardage markers located in the middle of the fairways. They were approximately four feet in height, four inches by four inches square, and made of a dense plastic composite material. Although the markers were removable, Sanchez testified during his deposition that he was not aware of that fact. He also stated that it was his practice, shared by other social golfers, to occasionally bend the rules to either take a second shot or kick his ball out from behind an obstacle. While playing the eleventh hole, Sanchez found himself approximately 17-20 yards in front of the 150-yard marker. He took note of the marker and intended to hit to the right of it, but the ball ricocheted off the marker and struck him in the right eye, causing serious injury.

Sanchez filed this negligence action against Candia Woods in January 2009. Candia Woods subsequently moved for summary judgment, asserting that it did not owe Sanchez any duty of care against ordinary risks, such as "errant balls," that are inherent in the game of golf and assumed in the ordinary course of play. Relying on *Allen v. Dover Co-Recreational Softball League*, 148 N.H. 407 (2002), and *Werne v. Executive Women's Golf Association*, 158 N.H. 373 (2009), the trial court granted summary judgment to Candia Woods.

Sanchez raises two issues on appeal. First, he argues that Candia Woods breached a non-delegable duty to provide a safe environment for its patrons, and it was error for the trial court to find as a matter of law that the placement of the yardage markers was not inherently dangerous. Second, he alleges that the trial court erred in granting summary judgment before the expert disclosure deadline had passed, even though he had informed the court he intended to disclose an expert witness to support his claim.

"In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." *Big League Entm't v. Brox Indus.*, 149 N.H. 480, 482 (2003). "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." *Id.* "We review the trial's court's application of the law to the facts *de novo.*" *Id.*

We agree with the trial court that the two cases upon which it relied set forth the applicable analytical principles. In *Allen*, the plaintiff was hit

in the head with a ball during a recreational softball tournament and sued several organizations associated with the tournament. She argued that the defendants were negligent in allowing the game to proceed without taking all reasonable safety precautions, including allowing players to bat without batting helmets, not maintaining a safe ratio of male to female players, permitting the use of a smaller than usual ball, and not warning players of the risk of injury. We considered various assumption of the risk theories and applied the "primary implied assumption of risk" doctrine to the plaintiff's claim. This doctrine applies when "a plaintiff voluntarily and reasonably enters into some relation with a defendant, which the plaintiff reasonably knows involves certain obvious risks such that a defendant has no duty to protect the plaintiff against injury caused by those risks." *Allen*, 148 N.H. at 414. Thus, the doctrine of primary implied assumption of the risk does not immunize a defendant from liability simply because a plaintiff voluntarily encounters a risk caused by that defendant's negligence. "When, however, a defendant owes no duty to a plaintiff in light of a particular risk, the defendant cannot be held accountable to a plaintiff who is injured upon the plaintiff's voluntary encounter with that risk." *Id.* at 416.

 We affirmed the trial court's dismissal of the plaintiff's claims, concluding that "when [the plaintiff] voluntarily played softball — a reasonable activity that she knew involved obvious risks — the defendants had no duty to protect her against injury caused by those risks." *Id.* "Participating in a sport gives rise to commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation. Risks that are outside the range of the ordinary activity involved in the sport, however, do not reasonably flow from participation." *Id.* at 417 (citations omitted). Thus, "[w]hen one creates an unreasonable risk under the circumstances . . . he has breached the standard of care." *Id.* at 418.

In *Werne*, the plaintiff sued for injuries suffered during a game of "glow golf," played at night by the light of tiki torches using glow-in-the-dark golf balls. Another golfer hit a ball which struck the plaintiff in the head, causing a concussion and serious injury. She sued the golfer and the event organizers. In affirming summary judgment in favor of the defendants, we reiterated that "[t]he defendants may only be held liable if their conduct unreasonably increased the risks inherent in the game . . . or if they unreasonably created or countenanced risks outside the range of ordinary activity involved in the sport." *Werne*, 158 N.H. at 379. Applying the *Allen* standard, we concluded, "All parties agree that being hit by an errant golf ball is a risk inherent in the game of glow golf." *Id.* at 378. "Although the conditions under which the game was played may not have been the safest

possible conditions, [the plaintiff] failed to demonstrate that any conduct unreasonably increased the inherent risk that [the plaintiff] could be struck by a ball while playing glow golf." *Id.*

Both obstacles and errant balls are known risks of the game of golf. "Golf courses are designed with both fixed and removable obstacles, to make play interesting and challenging." *American Golf Corp. v. Superior Court of Los Angeles*, 93 Cal. Rptr. 2d 683, 686 (Ct. App. 2000) (finding that yardage markers are common in golf). The Supreme Judicial Court of Maine has observed that "[t]he game of golf presents a known hazard, balls, hit by golfers, that do not always travel in the intended direction, and which are capable of causing serious personal injury." *Baker v. Mid Maine Medical Center*, 499 A.2d 464, 467 (Me. 1985).

Although the plaintiff argues in a conclusory fashion that the placement of the yardage marker increased the risk he faced in playing at Candia Woods, such does not address the question of whether the placement unreasonably increased the risks inherent in the game. We agree with the trial court that the "clearly visible yard markers are a known hazard of the game of golf" and "the location of the yard markers in this case [was] not inherently dangerous." The plaintiff was fully cognizant of the clearly visible yardage marker and intended to hit his ball around it. The risk of his shot ricocheting off the marker was one he assumed, and one against which the defendant had no duty to protect him.

Our decision is consistent with those of other jurisdictions that apply a similar standard. *Hornstein v. State of New York*, 259 N.Y.S.2d 902 (Ct. Cl. 1965) (finding that the plaintiff, hit in the eye by a ball hit from the adjacent tee, was not subjected to any unreasonable risks over and above those inherent in the game of golf); *Martins v. Kemper Sports Management, Inc.*, 172 Fed. Appx. 14 (4th Cir. 2006) (affirming summary judgment in favor of the owner of a country club which did not install plastic safety barriers on its driving range): *cf. Hawkes v. Catatonk Golf Club Inc.*, 732 N.Y.S.2d 132 (App. Div. 2001) (holding that the primary assumption of risk doctrine did not bar a claim by a plaintiff hit by a golf ball while in the golf club parking lot because the plaintiff was not actually engaged in the sport).

We note further that even under a standard less stringent than the standard applicable here, a similar claim has been rejected by California's Court of Appeals. In California, "a recreation provider owes a participant in an active sport a duty . . . not to increase the risk of harm over and above the inherent risk of the sport." *American Golf Corp.*, 93 Cal. Rptr. 2d. at 688. Applying the "increased risk" standard (and not our more stringent "unreasonably increased risk" standard), the court of appeals upheld the trial court's grant of summary judgment in favor of the defendant golf

course. *Id.* In that case, a yardage marker was located in the rough to the left of the fairway and was also made of a hard material. The marker was not in the golfer's line of play, but the golfer hooked the ball to the left, and the ball ricocheted off the marker and struck his companion in the eye. The court concluded that the "golf course did not increase the risk that [the plaintiff] would be struck by an errant shot by the construction or placement of the [yardage marker]. . . ." *Id.* at 689.

As to the plaintiff's argument that the trial court erred by ruling on Candia Woods' summary judgment motion in the absence of his anticipated expert's testimony, we note that expert testimony is relevant to the standard of care only where a duty has been established as a matter of law.

> The existence of a duty is not to be confused with details of the applicable standard of conduct. Duty is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; what the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty.

57A AM. JUR. 2D *Negligence* § 77 (2004) (footnotes omitted). The plaintiff acknowledged at oral argument that expert testimony is not required if it is established that there is no duty. Here, because Candia Woods has no duty to protect the plaintiff against the risk which he assumed, expert testimony is irrelevant.

*Affirmed.*

DALIANIS, J., concurred; BROCK, C.J., retired, specially assigned under RSA 490:3, concurred.