DECISION
This Court is asked in this action to determine whether a claim of negligence by one skier against another skier for injuries sustained when the two friends collided while skiing recreationally is barred as a matter of law by the doctrine of primary assumption of the risk under New Hampshire law. Defendant Deborah Boyd has filed a motion for summary judgment against Plaintiff Andree Fontaine, seeking to bar Plaintiff's negligence claim against her on the grounds that she owed no duty to protect Plaintiff from the inherent risk of such a collision. For the reasons set forth in this Decision, this Court grants Defendant Boyd's motion for summary judgment.
 I. Factual Background and Procedural History
This case stems from a skiing accident that occurred when Defendant Deborah Boyd allegedly skied over the back of Plaintiff Andree Fontaine's skis, causing Plaintiff Fontaine to fall and sustain injuries. The incident occurred on December 31, 2005, while Defendant Boyd, an intermediate to advanced skier, and Plaintiff Fontaine, an expert skier, were skiing with a group of five friends at Mount Sunapee in New Hampshire. (Fontaine Dep. 24:22; 16:20, Feb. 10, 2009.) *Page 2 
Plaintiff Fontaine, a Massachusetts resident, has brought a single count complaint for negligence against Defendant Boyd, a Rhode Island resident.
Plaintiff Fontaine testified at her deposition that, on December 31, 2005, the group was skiing down Skyway Trail, an intermediate level trail on Mount Sunapee. Id. 15:19. After starting down the trail, Plaintiff Fontaine began to catch up with Defendant Boyd, who was skiing in front of Plaintiff Fontaine, and decided to pass her. Id. 34:16. Plaintiff Fontaine testified that after passing Defendant Boyd, she heard scraping metal, felt like she was hit, and fell. Id. 35:1; 38:11; 39:10-12. Plaintiff Fontaine alleges that Defendant Boyd, without paying attention and failing to maintain control, negligently and carelessly skied across the back of her skies, causing Plaintiff Fontaine to fall. (Pl.'s Ans. to Interrog. No. 21.) Although Defendant Boyd contends that she did not ski over the back of Plaintiff Fontaine's skies, Defendant Boyd does not dispute Plaintiff Fontaine's allegation in this regard for the purposes of this motion.
As a result of her fall, Plaintiff Fontaine sustained serious and permanent injuries to her left and right knees. The injuries have resulted in extensive medical treatment, including multiple surgeries. Plaintiff Fontaine continues to experience pain and limited mobility.
Defendant Boyd filed a motion for summary judgment, together with a supporting memorandum of law. Plaintiff Fontaine filed an objection and memorandum in opposition to Defendant Boyd's motion for summary judgment to which Defendant Boyd replied. This Court heard oral argument on May 17, 2010. After review of these memoranda, oral argument and research and review of pertinent authority, this Decision follows. *Page 3 
 II. Standard of Review
In ruling on a motion for summary judgment, this Court must view all facts, and draw all reasonable inferences therefrom, in a light most favorable to the non-moving party. Delta Airlines,Inc. v. Neary, 785 A.2d 1123, 1126 (R.I. 2001). If the facts, viewed in that light, are insufficient to sustain a cause of action, then the moving party is entitled to judgment as a matter of law.Id.
 III. Analysis
A. Choice of Law
As a preliminary matter, Defendant Boyd argues that choice of law principles require the application of New Hampshire law to this case. Plaintiff Fontaine agrees that New Hampshire law should apply.
In resolving conflict-of-law issues, Rhode Island adopts the interest-weighing approach and considers the following factors:
 1.) predictability of results;
 2.) maintenance of the interstate and international order;
 3.) simplification of the judicial task;
 4.) advancement of the forum's governmental interests; and
 5.) application of the better rule of law.
Cribb v. Augustyn, 696 A.2d 285, 288 (R.I. 1997). This Court also considers:
 1.) the place where the injury occurred;
 2.) the place where the conduct causing the injury occurred;
 3.) the domicile, residence, nationality, place of incorporation and the
 place of business of the parties; and 4.) the place where the relationship, if any, between the parties is centered. *Page 4 
Id. The Rhode Island Supreme Court has stated that in "tort cases, the most important factor is the location where the injury occurred." Taylor v. Mass. Flora Realty, Inc.,840 A.2d 1126, 1128 (R.I. 2004).
After reviewing the memoranda submitted by both parties, this Court agrees that New Hampshire law should govern this case. Here, the injury occurred after an alleged collision between the parties on a New Hampshire ski mountain. The relationship between the parties, for the purposes of this case, was centered in New Hampshire. Applying New Hampshire law to an accident at a New Hampshire ski mountain would lead to more predictable results in similar cases and reflect the greater interest of that forum in addressing skier-to-skier liability and skier safety at its resorts. Rhode Island and Massachusetts have little nexus to this dispute other than each being the residence of one of the parties.[1]
B. Primary Assumption of the Risk
Defendant Boyd argues that under New Hampshire law, Plaintiff Fontaine's claim is barred by the doctrine of primary assumption of the risk. According to Defendant Boyd, under that doctrine, she owed no duty to protect Plaintiff Fontaine from the ordinary and inherent risks of the sport of skiing. Defendant Boyd argues that, by participating in the sport of downhill skiing, Plaintiff Fontaine assumed the risk of a collision on the hill with another individual, as that is a risk inherent in the sport of skiing. Her duty to Plaintiff Fontaine, therefore, was not a duty to exercise reasonable care (as would be typical in a negligence case) but was only a duty not to unreasonably increase the risk of harm to Plaintiff Fontaine that is inherent in the sport of skiing. As there is no evidence that Defendant Boyd did anything to unreasonably increase the inherent risk of a collision with her friend while they were skiing, she contends that she is not *Page 5 
liable to Plaintiff Fontaine as a matter of law. In support of her argument, Defendant Boyd relies on a New Hampshire statute that "recognize[es] that the sport of skiing and other ski area activities involve risks and hazards which must be assumed as a matter of law by those engaging in such activities. . . ." N.H. Rev. Stat. § 225-A:1 (1957, as amended).
In the alternative, Defendant Boyd argues that, even were a negligence standard to define her duty to Plaintiff Fontaine, Plaintiff's claim would be barred under New Hampshire's comparative negligence statute, as a matter of law, because Plaintiff Fontaine was more than fifty percent (50%) at fault for the accident.
Plaintiff Fontaine quarrels with Defendant Boyd's theory as to the legal duty that one skier owes to another skier when both are engaged in recreational skiing. Plaintiff Fontaine contends that Defendant Boyd owed her a duty to exercise reasonable care under the circumstances such that Defendant Boyd is not afforded immunity under the New Hampshire primary assumption of the risk doctrine. In arguing for the application of a negligence standard, Plaintiff Fontaine specifically rejects Defendant Boyd's argument that Defendant only had a duty to not unreasonably increase the risk of harm to Plaintiff Fontaine that is inherent in skiing. In this regard, Plaintiff Fontaine heavily relies on another provision of the same New Hampshire statute relied on by Defendant Fontaine that states that "[e]ach skier shall . . . conduct himself [or herself] within the limits of his [or her] own ability, maintain control of his [or her] speed and course at all times while skiing, . . . and refrain from acting in a manner which may cause or contribute to the injury of himself [or herself] or others."Id. § 225-A:24. She contends that the statutory provision relied on by Defendant Boyd that provides that skiers assume inherent risks of skiing as a matter of law applies only to claims by skiers against ski resort operators and not claims of negligence by one skier against another skier. Seeid. § 225-A:1. According to *Page 6 
Plaintiff Fontaine, there are genuine issues of material fact as to whether Defendant Boyd's conduct, allegedly skiing over the back of Plaintiff Fontaine's skis, demonstrates a deviation by Defendant Boyd from the negligence standard of reasonable care owed by one skier to another skier under New Hampshire law.
Alternatively, should this Court find that a negligence standard does not apply, Plaintiff Fontaine agrees with Defendant Boyd that Defendant only would be liable if she "unreasonably increased" the inherent risk of injury to Plaintiff Fontaine from downhill skiing. According to Defendant Boyd, however, Plaintiff Fontaine has not produced any evidence to suggest that Defendant Boyd acted unreasonably under the circumstances so as to increase the risk inherent in downhill skiing. Defendant Boyd asserts that Plaintiff Fontaine improperly bases her entire theory of liability on the fact that an accident occurred.
1. The Doctrine of Assumption of the Risk
Assumption of the risk has been defined by various courts to mean: (1) that a plaintiff has given his or her express consent to relieve the defendant of an obligation to exercise care for his or her protection (such that plaintiff agrees to take his or her chances as to injury from a known or possible risk); (2) that plaintiff has entered voluntarily into some relationship with the defendant which he or she knows involves the risk; or (3) that plaintiff, aware of the risk created by the defendant's negligence, proceeds voluntarily to encounter it.See Smith v. Seven Springs Farm, Inc.,716 F.2d 1002, 1005 (3rd Cir. 1983) (citing Restatement (Second) of Torts § 496A comment c (1965)). In reality, however, there are really two types of assumption of risk defenses: primary and secondary assumption of risk. When "plaintiff's conduct in voluntarily encountering a known risk was reasonable," then "the defense of assumption of the risk in its primary sense operates to deny the defendant's negligence by denying the duty of care element *Page 7 
of that offense; plaintiff does not recover because defendant's conduct is not a legal wrong as to him [or her]." Id. (citing Prosser, Law of Torts § 68 at 440 (4th
ed. 1971)) (other citations omitted) (emphasis added). "But if plaintiff's conduct was unreasonable, the defense of assumption of risk in its secondary sense operates to bar his [or her] recovery for two reasons — because he [or she] implicitly consented to accept the risk, and on the policy grounds that it would be inappropriate to impose on the defendant a loss for which plaintiff's own negligence was in part responsible." Id.
(citing Restatement (Second) of Torts § 496A, comment c(4) (1965)) (other citations omitted) (emphasis added).[2]
Recognizing the doctrine of primary assumption of the risk, the New Hampshire Supreme Court has explained that it applies when a plaintiff voluntarily and reasonably enters into some relationship with a defendant, which the plaintiff reasonably knows involves certain obvious *Page 8 
risks, such that a defendant has no duty to protect the plaintiff against the injury caused by those risks. Werne v. ExecutiveWomen's Golf Assoc., 969 A.2d 346, 348 (N.H. 2009) (holding that defendant had no duty to protect plaintiff from severe injury caused when he hit a golf ball and it struck her head such that plaintiff's claim of negligence was barred by the doctrine of primary assumption of the risk); Allen v. Dover,807 A.2d 1274, 1282 (N.H. 2002) (doctrine of primary assumption of the risk bars plaintiff from recovering damages for injuries received from being hit in the head by an errant softball as that was an inherent risk of the game from which the defendant had no duty to protect plaintiff). When a defendant owes no duty to a plaintiff in light of a particular risk, the defendant cannot be held accountable to a plaintiff who is injured upon the plaintiff's voluntary encounter with that risk. See id.; LaFontaine v. St. John, 92 N.H. 319, 321, 30 A.2d 476 (1943). In other words, a defendant who has no duty cannot be negligent.Walls v. Oxford Management Co., 633 A.2d 103, 104 (N.H. 1993).
The New Hampshire Supreme Court has defined the boundaries of the doctrine of primary assumption of the risk as applied to sports injuries. It has elucidated the circumstances under which a defendant may and may not be liable for causing injury to another participant in the sport, stating:
 [a] defendant may be held liable to the plaintiff for [unreasonably] creating or countenancing risks other than risks inherent in the sport, or for increasing inherent risks, and in any event will be held liable for reckless [] or intentional [] injurious conduct totally outside the range of ordinary activity involved in the sport, but liability should not place unreasonable burdens on the free and vigorous participation in the sport. A defendant, however, may not be held liable for negligent, or even reckless or intentional injurious conduct that is not outside the range of ordinary activity involved in the sport.
Allen, 807 A.2d at 1285 (citations omitted). *Page 9 
In applying these precepts, the New Hampshire Supreme Court inAllen held that a defendant had no duty to protect a plaintiff against injury to her head from being struck by a softball, as that was an ordinary risk of playing recreational softball. 148 N.H. 407, 416 (N.H. 2002). A person "owes a duty of care only to those who are foreseeably endangered by their conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous."Id. at 417 (citing Manchenton v. Auto Leasing Corp.,135 N.H. 298, 304, 605 A.2d 208 (1992)).
The New Hampshire Supreme Court recently reaffirmed the dictates of Allen in Werne v. Executive Women's Golf Ass'n and held that a plaintiff golfer had failed to allege facts showing that the defendant's conduct increased the inherent risk in glow golf, [3] as required for plaintiff to establish liability on her negligence claim. 158 N.H. 373 (N.H. 2009). In Werne, plaintiff and defendant were engaged in a game of glow golf when defendant made a shot that hit plaintiff in the head, causing her to suffer a concussion and permanent brain damage.Id. at 374. The Supreme Court concluded that being hit by an errant golf ball is a risk inherent in the game of glow golf and that plaintiff did not allege any facts to show that the defendant unreasonably increased this inherent risk by her conduct.Id. at 378.
The New Hampshire Supreme Court has not yet had occasion to address the question of the duty that one skier owes to another skier in the course of recreational skiing. At least one California court, however, has held that the doctrine of primary assumption of the risk bars a negligence claim by a skier against another skier. See Cheong v.Antablin, 946 P.2d 817 (Cal. 1997). In Cheong, the defendant was downhill skiing at a speed faster than his ability.Id. After turning in an attempt to slow down and stop, the defendant collided with the plaintiff and injured *Page 10 
him. Id. at 819. The Court found, consistent with the New Hampshire Supreme Court's holding in cases involving sports other than skiing, that the defendant's conduct did not rise to the level of reckless or intentional behavior, such that the plaintiff assumed the risk, inherent in skiing, that the defendant would collide with him in this situation. Id. at 822-823.
This Court sees no reason that the New Hampshire Supreme Court would apply any different standard of care in the skiing context than did this California court or than it has applied with respect to other sports activities.[4] To do so would be to treat skiers differently from participants in other sport activities, potentially chilling their active participation in a sport that has its inherent risks but that is enjoyed by legions of residents and visitors in the mountains of New Hampshire.
In addition, were this Court to apply a different standard of care to recreational skiers than to other athletes, the illogical effect would be to impose a standard of care for skiers suing other skiers that differs from the standard of care that the New Hampshire Supreme Court has recognized as applicable where a skier sues a ski area operator. In Cecere v. Loon Mountain Recreation Corp., the New Hampshire Supreme Court, relying on N.H. Rev. Stat. § 225-A:1, held that "[s]ki area operators owe no duty to protect patrons from the inherent risks of skiing and thus are immunized from liability for any negligence related to these risks." 155 N.H. 289, 295, 923 A.2d 198, 205 (N.H. 2007). Finding a snowboard jump in a terrain park to be a variation in terrain that is an inherent risk of skiing, the Supreme Court barred recovery against Loon Mountain in a wrongful death action for its alleged negligence in designing, constructing *Page 11 
and maintaining a jump that the decedent failed to safely land. Were this Court to apply a negligence standard in the case at bar, it would suggest that skiers owe a higher duty to other skiers than a ski area operator owes to skiers with respect to protecting them from the inherent risks of skiing. This result cannot be countenanced by this Court.
While Plaintiff Fontaine argues that another provision of the New Hampshire statute that the New Hampshire Supreme Court relied on in Cecere makes it clear that a negligence standard applies to an action by one skier against another skier for injuries resulting from a collision, as distinguished from the statutory immunity recognized in Cecere which she argues is limited to ski area operators, this Court disagrees. The statutory language in § 225-A:24 upon which Plaintiff Fontaine relies must be considered together with the broader provisions of that statutory section that provide, in pertinent part, as follows:
 Responsibilities of Skiers and Passengers. It is hereby recognized that, regardless of all safety measures which may be taken by the ski area operator, skiing, snowboarding, snow tubing, and snowshoeing as sports, and the use of passenger tramways associated therewith may be hazardous to the skiers or passengers. Therefore:
 I. Each person who participates in the sport of skiing, snowboarding, snow tubing, and snowshoeing accepts as a matter of law, the dangers inherent the sport, and to that extent may not maintain an action against the operator for any injuries which result from such inherent risks, dangers, or hazards. The categories of such risks, hazards, or dangers which the skier or passenger assumes as a matter of law include but are not limited to the following: variations in terrain, surface or subsurface snow or ice conditions; bare spots; rocks, trees, stumps and other forms of forest growth or debris; terrain, lift towers, and components thereof (all of the foregoing whether above or below snow surface); pole lines and plainly marked or visible snow making equipment; collisions with other skiers or other persons or with any of the categories included in this paragraph.
 II. Each skier and passenger shall have the sole responsibility for knowing the range of his or her own ability to negotiate any slope, trail, terrain, or passenger tramway. Any passenger who boards such tramway shall be presumed to have *Page 12 
sufficient knowledge, abilities, and physical dexterity to negotiate the lift, and no liability shall attach to any operator or attendant for failure to instruct persons on the use thereof.
 III. Each skier or passenger shall conduct himself or herself, within the limits of his or her own ability, maintain control of his or her speed and course at all times both on the ground and in the air, while skiing, snowboarding, snow tubing, and snowshoeing heed all posted warnings, and refrain from acting in a manner which may cause or contribute to the injury of himself, herself, or others.
 . . .
 V. No skier, passenger or other person shall:
 . . .
 (c) Engage in any type of conduct which will contribute to cause injury to any other person nor shall he willfully place any object in the uphill ski track which may cause another to fall while riding in a passenger tramway.
 . . .
N.H. Rev. Stat. § 225-A:24 (emphasis added). Plaintiff Fontaine argues that the language of § 225-A:24 that imposes duties on skiers to "know[] the range of [their] abilit[ies]," "conduct [themselves] within the limits of [their] abilit[ies]," "maintain control of [their] speed and course at all times both on the ground and in the air, while skiing" and "refrain from acting in a manner which may cause or contribute to the injury of [themselves] or others" suggests that the legislature created statutory duties of reasonable care that skiers owe other skiers, thereby subjecting them to potential negligence liability for a violation of these duties.Id.
This Court, however, construes § 225-A:24 differently. It clearly provides, in addition to the statutory language relied upon by Plaintiff Fontaine, that "every person who participates in the sport of skiing . . . accepts as a matter of law the dangers inherent in the sport, . . . includ[ing] . . . collisions with other skiers."Id. Moreover, § 225-A:24 is only one section of Chapter 225 ("Skiers, Ski Area and Passenger Tramway Safety") of Title XIX ("Public Recreation") of the Revised Statutes of the State of New Hampshire. Section 225-A:1, which declares the policy underpinnings of this statutory scheme, provides, in pertinent part, as follows: *Page 13 
 Declaration of Policy. The state of New Hampshire finds that the sports of skiing, snowboarding, snow tubing, and snowshoeing are practiced by a large number of citizens of the state of New Hampshire, and also that skiing, snowboarding, snow tubing, and snowshoeing attract to the state of New Hampshire large numbers of nonresidents significantly contributing to the economy of New Hampshire. Therefore, it shall be the policy of the state of New Hampshire to protect its citizens and visitors from unnecessary mechanical hazards in the operation of ski tows, lifts, nordic ski jumps and passenger tramways, to ensure that proper design and construction are used, that board accepted safety devices and sufficient personnel are provided for, and that periodic inspections and adjustments are made which are deemed essential to the safe operation of ski tows, ski lifts, nordic ski jumps and passenger tramways. . . . Further, it shall be the policy of the state of New Hampshire to define the primary areas of responsibility of skiers and other users of alpine (downhill) and nordic (cross country and nordic ski jumps) areas, recognizing that the sport of skiing and other ski area activities involve risks and hazards which must be assumed as a matter of law by those engaging in such activities, regardless of all safety measures taken by the ski area operators.
Id. § 225-A:1 (emphasis added). This policy declaration thus mirrors the language of § 225-A:24 to the extent that it provides "that the sport of skiing involve[s] risks and hazards which must be assumed as a matter of law by [skiers]." Id. While the statute thus imposes duties on skiers generally, under § 225-A:24, those duties must be construed in light of the other provisions of the statute, in §§ 225-A:1 and 225-A:24, that articulate the policy of the state of New Hampshire that skiers assume certain risks — — including collisions with other skiers — — as a matter of law. In fact, the legislature itself recognized that the policy of the state includes both the imposition of duties on skiers to enhance skier safety and recognition that skiers assume certain risks inherent in the sport of skiing as a matter of law. The fact that the latter policy limits the former is reflected in the statutory language of the policy provision itself, which reads:
 it shall be the policy of the state of New Hampshire to define the primary areas of responsibility of skiers . . . recognizing that the sport of skiing . . . involve[s] risks and hazards which must be assumed as a matter of law. . . . *Page 14 
Id. (emphasis added).
While Plaintiff Fontaine seeks to limit Chapter 225-A (inclusive of the provisions in §§ 225-A:1 and 225-A:24) to ski operators, the language of the statute is broader. Chapter 225-A, for example, is entitled "Skiers, Ski Area and Passenger Tramway Safety."Id. Ch. 225-A (emphasis added). Although the declaration of policy contained in § 225:A-1 clearly includes protecting citizens and visitors from hazards under the control of ski area operators (such as the design, construction and operation of ski tows, lifts, jumps and tramways), it also discusses skiers' responsibilities and their assumption of risks and hazards "regardless of all safety measures taken by ski area operators." Id. 225A:1. Indeed, § 225:24 contains a lengthy provision entitled "Responsibilities of Skiers and Passengers" that further defines the risks skiers assume as a matter of law and their responsibilities to enhance skier safety. Id. § 225-A:24. Moreover, § 225-A:24 exists in addition to § 225-A:23 — — a provision that outlines the responsibilities of ski area operators. Seeid. §§ 225A: 23 and 225-A:24.
While Chapter 225-A only explicitly immunizes ski area operators from liability for injuries resulting from dangers inherent in the sport, see id. § 225-A:24 I, it in no way suggests that skiers may be liable in like circumstances. Ski area operators, as the proverbial "deep pockets" potentially available to compensate injured skiers at their resorts, undoubtedly were of particular focus in this legislative enactment. That fact is reflected in the policy preamble of the statute that recognizes that "skiing . . . attract[s] to the state of New Hampshire large numbers of nonresidents significantly contributing to the economy of New Hampshire." Id. § 225-A:1. The legislature made a policy judgment that providing ski operators with immunity was necessary to promote tourism and the state's ski economy. Yet, this Court sees no legislative intent to allow skiers who are injured by risks and hazards inherent in skiing that they assumed as a matter of *Page 15 
law (such as "collisions with another skier" under § 225-A:24 I) to sue other skiers but bar them in those circumstances from suing the ski area operator. To the contrary, the legislature clearly reaffirmed the common law doctrine of primary assumption of the risk and codified it in the statute with respect to skiers. Id. §§ 225-A: 1 and 225-A:24. Chapter 225-A thus protects skiers from liability for negligence with respect to injuries to another skier resulting from the inherent risks of skiing, notwithstanding the absence in the statute of an express immunity provision for individual skiers.
In light of the existing case law in New Hampshire applying the doctrine of primary assumption of the risk to injuries received during recreational sports activities, the assumption of the risk language in §§ 225-A:1 and 225-A:24, this Court's interpretation of Chapter 225-A, the New Hampshire Supreme Court's refusal to impose a negligence standard on ski area operators, and other persuasive authority applying the doctrine of primary assumption of the risk to bar skier-to-skier liability, it is apparent that negligence is not the appropriate standard to be applied in this case. Although Plaintiff Fontaine has advanced a creative argument using the language of § 225-A:24 to support her position, it is clear from both the language of Chapter 225-A in its entirety and its policy underpinnings that the New Hampshire legislature in no way intended that statute to negate the common law doctrine of primary assumption of the risk vis-à-vis individual skiers or impose a legal duty of ordinary care upon skiers different from the duty imposed on ski operators. It intended, to the contrary, to codify skiers' responsibilities to try to enhance skier safety while at the same time retaining the doctrine of primary assumption of the risk to limit the liability of skiers should injury caused by inherent risks of skiing occur. To recognize a duty of ordinary care, as Plaintiff Fontaine suggests, would be to countenance a negligence action by one skier against another skier, in the absence of conduct by that other skier that unreasonably *Page 16 
increased the inherent risks attendant to skiing, that could chill active participation in a sport that has its inherent risks but is part of life in the mountains of New Hampshire.
This Court concludes, therefore, as a matter of law, that Defendant Boyd had no duty to protect Plaintiff Fontaine from dangers inherent in the sport of skiing. Defendant Boyd only had the duty not to act in a manner that would unreasonably increase those inherent risks. Accordingly, absent facts from which a reasonable fact finder could conclude that Defendant Boyd unreasonably increased the risks to Plaintiff Fontaine inherent in skiing, Plaintiff Fontaine's claim is barred by the doctrine of primary assumption of the risk. See Werne, 158 N.H. at 378.
2. Application of the Doctrine of Primary Assumption of theRisk to this Case
Plaintiff Fontaine argues here that Defendant Boyd was not paying attention and failed to maintain control when she allegedly skied over the back of Plaintiff Fontaine's skis. Plaintiff Fontaine does not allege that Defendant Boyd was skiing recklessly, intentionally ran over the back of her skies, or that she in any other way unreasonably increased the risk, inherent in skiing, that the two of them might collide. Additionally, there are no facts in the record to support a finding of recklessness or intentional misconduct by Defendant Boyd or action or inaction by her that unreasonably increased the risk to Plaintiff Fontaine that Defendant Boyd would collide with her on the slope.
Thus, in viewing the facts in a light most favorable Plaintiff Fontaine, by assuming that Defendant Boyd was not paying attention, failed to maintain control, and skied over the back of Plaintiff Fontaine's skies, this Court must conclude that the conduct of Defendant Boyd does not rise to the level of unreasonably increasing the risk to Plaintiff Fontaine, inherent in skiing, that another skier, skiing in such a manner, might collide with her and cause her to fall and be *Page 17 
injured. Those facts, even if accepted for purposes of this motion, do not suggest recklessness or intentional misconduct on the part of Defendant Boyd. Indeed, the defendant skier's conduct inCheong, skiing faster than his ability, arguably was more dangerous than that of Defendant Boyd here (and perhaps even reckless). Yet, the Court in that case still held, logically, that such conduct was a risk that plaintiff assumed by skiing. See Cheong, 946 P.2d at 819, 822-23. Plaintiff Fontaine's complaint for negligence is thus barred by the doctrine of primary assumption of the risk.[5]
 IV. Conclusion
Accordingly, for the reasons stated in this Decision, Defendant Boyd's motion for summary judgment is granted. Counsel for the parties shall confer and submit forthwith for entry by this Court an agreed upon form of order and judgment that is consistent with this Decision.
[1] Plaintiff Fontaine conceded at oral argument that, under the laws of Rhode Island and Massachusetts, her claim might well be barred by the doctrine of primary assumption of the risk.
[2] "In its secondary sense, therefore, the defense of assumption of risk overlaps with the defense of contributory negligence [or the doctrine of comparative fault]." Smith v. Seven Springs Farm,Inc., 716 F. 2d 1002, 1006 (3rd Cir. 1983).
 Where [these defenses] have been distinguished, the traditional basis has been that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of conduct of the reasonable [person], however unaware, unwilling, or even protesting the plaintiff may be. Obviously the two may co-exist, when the plaintiff makes an unreasonable choice to incur the risk; but either may exist without the other. The significant difference, when there is one, is likely to be one between risks which were in fact known to the plaintiff and risks which he [or she] merely might have discovered by the exercise of ordinary care.
Id. (quoting Prosser, Law ofTorts § 68 at 441 (4th ed. 1971)) (other citation omitted). "Thus, if a distinction must be made, it is that assumption of risk involves the meeting of a subjectively known risk, whereas contributory negligence may involve the plaintiff exposing himself [or herself] to a danger of which he [or she] was subjectively unaware but which would have been apparent had he [or she] used due care. Id. With the former, plaintiff's conduct may be quite reasonable because its advantages outweigh its risks; but regardless, if plaintiff is injured, defendant is not liable. With the latter, plaintiff's conduct may be considered in itself unreasonable; if plaintiff is injured, he [or she] is barred from recovering because of his [or her] failure to exercise due care." Id.
Under New Hampshire law, when a defendant breaches a duty owed to a plaintiff and the plaintiff knows of the danger presented by a defendant's negligence and voluntarily encounters it, the defendant may be held liable. See Allen v. Dover,807 A.2d 1274, 1283 (N.H. 20002). The fact that the plaintiff knew of the danger and voluntarily encountered it does not, in and of itself, bar the plaintiff from recovering for her injuries; rather, this fact is "merely evidence to be considered with other relevant facts on the issue of [the plaintiff's negligence]."Id. Use of the term "assumption of the risk" "to bar a non-negligent plaintiff's recovery merely because she [or he] knew that a defendant breached a duty owed to her [or him] has been repeatedly rejected by [the New Hampshire Supreme Court], which has held that a plaintiff does not assume the risk of injury simply by knowing of and voluntarily encountering a risk created by a defendant's negligence." Id.
[3] Glow golf involves golfing at night while using glowing golf balls and other glowing devices, such as tiki torches and glow necklaces, to illuminate the golf course and the participants.Werne, 158 N.H. at 374.
[4] Neither the parties to this case nor this Court have been able to locate any New Hampshire authority discussing the duty that one skier owes to another skier during recreational skiing. Surprisingly, there appear to be no reported New Hampshire cases where one skier has sued another skier for personal injury. Query whether the dearth of New Hampshire authority involving a suit by one skier against another skier — in a state replete with ski resorts and presumably with a documented history of skier collisions at such resorts — — itself suggests a generally accepted view that, in the ordinary case, a skier has no liability for colliding with and causing injury to another skier?
[5] In light of this conclusion, it is unnecessary for this Court to reach Defendant Boyd's alternative argument that Plaintiff Fontaine's claim is barred under New Hampshire's comparative negligence statute. *Page 1