# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0364, <u>Tammy Soule & a. v. Keith Bergeron</u>, the court on January 31, 2020, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  We affirm.

The plaintiffs, Tammy Soule (victim) and Eric Soule (husband), appeal an order of the Superior Court (<u>St. Hilaire</u>, J.) granting summary judgment in favor of the defendant, Keith Bergeron.  They contend that the trial court erred by concluding that:  (1) the victim entered into a relationship with the defendant such that the doctrine of primary implied assumption of risk applied; (2) the victim's injuries were caused by risks inherent to horse pulling competitions; (3) the defendant's actions did not increase the inherent risks; (4) the defendant was not negligent; and (5) the defendant's actions were not the proximate cause of the victim's injuries.  They further contend that RSA 508:19 (2010), governing liability associated with equine activities, is not applicable.

In reviewing a grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party.  <u>Sanchez v. Candia Woods Golf Links</u>, 161 N.H. 201, 203 (2010).  If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment.  <u>Id</u>.  We review the trial court's application of the law to the facts <u>de</u> <u>novo</u>.  <u>Id</u>.

In this case, the victim, who testified in her deposition that she owned and competed with "pulling" horses, chose to sit in the middle of the arena where a pulling competition was taking place, rather than in the bleachers surrounding the arena.  Although she had no team entered in the competition, she testified that "[a] lot of us horse pullers" would sit in the middle of the arena during competitions.  Another witness described that the teams waiting to compete were "parked" at one end of the arena, the victim and others were seated in front of them in the middle of the arena, and the pulling competition took place at the other end of the arena.

The defendant was driving a team in the competition.  At one point, the horses took off before the weight they were to pull was successfully secured to them.  The victim testified that less than a second ordinarily elapses between the weight being secured and the horses starting to pull.  When his team ran without

the weight attached, the defendant was dragged, fell, and lost his grip on the reins. The horses ran toward their "parking" spot, as another pulling horse owner testified loose teams typically do. That owner waved his hands in the air to deter the runaway team from coming near his horses, which were "parked." The runaway team then collided with the victim.

We have recognized that participating in a sport gives rise to commonly appreciated risks that are inherent in and arise out of the nature of that sport. Werne v. Exec. Women's Golf Assoc., 158 N.H. 373, 376 (2009). The doctrine of primary implied assumption of risk applies when a plaintiff voluntarily and reasonably enters into some relation with a defendant that the plaintiff reasonably knows involves certain obvious risks such that the defendant has no duty to protect the plaintiff against injuries that may be caused by those risks. Id. In such circumstances, the defendant is not liable unless he unreasonably increased that risk or unreasonably created or countenanced risks outside the range of ordinary activity involved in the sport. Id. at 377.

The plaintiffs represent that "in unique circumstances the doctrine can apply to spectators, [but] the spectator must still knowingly assume the risks flowing from the activity either by virtue of the risk being obvious and inherent to spectating or through affirmatively acting in a manner that places the individual within the realm of inherent risks." We conclude that the victim's decision to watch the defendant's pulls from inside the arena met these requirements and established the requisite relationship between the parties.

Determining the duty placed upon a defendant in a particular case is a question of law. Allen v. Dover Co-Recreational Softball League, 148 N.H. 407, 417 (2002). We consider: (1) the nature of the sport involved; (2) the type of contest, i.e., amateur, high school, little league, pick-up, etc.; (3) the ages, physical characteristics, and skills of the participants; (4) the type of equipment involved; and (5) the rules, customs, and practices of the sport, including the types of contact and the level of violence generally accepted. Id. at 418. A defendant may not be held liable for negligent, or even reckless or intentional, injurious conduct that is within the range of ordinary activity involved in the sport. Id.

In this case, the victim testified that she knew there was always a possibility at a horse pulling event that a horse could get loose, take off, and hurt someone. She further testified that she assumed that risk by going into the arena.

Similarly, one of the fair's judges testified that runaway horses are a known risk in horse pulling competitions. Another contestant testified that he had seen horses run away at pulling events and that several years earlier his horses had done so. He further testified that most fairs require pulling horse owners to insure their horses in case "[t]hey break loose from the hitch, run into

2

the crowd, [or] anything." The husband corrected his deposition to say that being trampled by a horse at a pulling competition is "possible," but that he did not "view it as a risk . . . even if you are sitting inside the ring," thereby indicating that sitting in the arena exposes one to this type of risk. The horse puller owner whom the plaintiffs identify as their expert testified in her deposition that, although not a common occurrence, runaway horses happen at pulling competitions and that someone had been injured when her horse had run loose at a different fair.

The plaintiffs offered no evidence that runaway horses were not a known risk at pulling competitions. Instead, they point to their expert's statement that when she had "seen horses taking off without being hitched to the sled, a driver has always been able to control them and stop them, or at least direct them away from . . . spectators." However, the plaintiffs do not claim that all drivers are always able to do so. See Allen, 148 N.H. at 419 (stating softball in-fielder had no duty to make only accurate throws).

The plaintiffs argue that the risk of a runaway team is not inherent and obvious in horse pulling because it does not occur frequently or typically result in serious injury. However, they cite no authority that to be inherent, something must occur frequently. See Sanchez, 161 N.H. at 205 (stating risk of ball ricocheting off yardage marker and hitting player in eye was inherent in golf).

Viewing the evidence presented in the light most favorable to the plaintiffs, we conclude that a runaway team is within the range of ordinary activity in horse pulling competitions. See Allen, 148 N.H. at 417.

The plaintiffs next contend that the trial court erred by finding that the defendant's conduct did not unreasonably increase the inherent risk that his pulling team would run away. See Werne, 158 N.H. at 377. They contend that the defendant did so by: (1) drinking alcohol before the pulling competition; and (2) engaging in a series of negligent acts that combined to increase the inherent risks.

Even taken in the light most favorable to the plaintiffs, the evidence does not support a reasonable inference that the defendant was impaired by alcohol at the time of the competition. The husband testified that, when he spoke with the defendant immediately after the victim was injured, the defendant did not seem drunk. At his deposition, the horse pulling judge described his several encounters with the defendant during the hours before the competition and testified that he would have noticed if the defendant had been intoxicated and that nothing led him to believe that the defendant was impaired. Similarly, the plaintiffs' expert, who was sitting with the victim when the defendant's team ran loose, testified that she could not "say that [the defendant] was drunk when he was driving" the horses.

The only evidence that the defendant was drinking alcohol before the pull consisted of deposition testimony that he was seen drinking a single beer at 5:45 a.m. ─ approximately five hours before the competition. The plaintiffs argue that this combined with the defendant's failure to control the horses constitute "circumstantial evidence that [the defendant] increased an inherent risk of the activity by consuming alcohol." However, the plaintiffs' expert testified that drivers are not always at fault when a pulling team runs away. We agree with the trial court that expert testimony, which the plaintiffs did not offer, would be required to connect these events. See State v. DePaula, 170 N.H. 139, 153 (2017) (stating expert testimony involves special observation not within common knowledge of the general public).

The plaintiffs next contend that the way in which the defendant operated the horses unreasonably increased the inherent risk that they would run away. However, the husband, after watching videos of his own pull and the defendant's pull, testified that he did not do anything differently from the defendant. Moreover, because the victim knew that sitting in the arena during a horse pulling competition involved certain obvious risks, the defendant had no duty to protect her against injury caused by those risks. See Allen, 148 N.H. at 414 (stating defendant had no duty to protect plaintiff who was playing softball from being hit by ball because risk was obvious). A defendant who has no duty cannot be negligent. Id. at 416. He may not be held liable for negligent conduct that is not outside the range of ordinary activity involved in the sport. Id. at 418. In this case, the plaintiffs failed to establish that the defendant's conduct was outside the ordinary range of activity in horse pulling competitions.

Viewing the evidence in the light most favorable to the plaintiffs, we conclude that the evidence discloses no genuine issue of material fact and that the defendant is entitled to judgment as a matter of law. See Sanchez, 161 N.H. at 203. In light of this conclusion, we need not address the plaintiffs' arguments regarding proximate cause or RSA 508:19. Any remaining issues raised by the plaintiffs' brief do not warrant further discussion, see Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**

4