KENNARD, J., Dissenting.
In Knight v. Jewett (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] (Knight), a plurality of this court introduced a radical transformation of California’s tort law: Participants in active sports are exempt from the usual tort law standard of care—as measured by the conduct of a reasonable person in like or similar circumstances—to prevent injury to coparticipants. The only duty owed, the plurality said, is not to increase the risk of harm “inherent” in a particular sport (id. at pp. 315-316 (plur. opn. of George, J.)); whether a risk is inherent is a legal question to be decided by the judge before trial (id. at p. 313). I dissented in Knight, noting the difficulty trial judges would face in pretrial proceedings, on demurrer or on a motion for summary judgment, in discerning “which risks are inherent in a given sport” (id. at p. 337 (dis. opn. of Kennard, J.)). I perceived no good reason to abandon the traditional defense of assumption of risk, which pertains to a plaintiff’s knowing and voluntary acceptance of the risk of injury in a particular activity.
Eleven years later, in Kahn v. East Side Union High School Dist. (2003) 31 Cal.4th 990 [4 Cal.Rptr.3d 103, 75 P.3d 30] (Kahn), a majority of this court extended the reasoning of the Knight plurality beyond sports participants by applying it to a high school swim coach who supervised and trained sports participants. I disagreed, for reasons similar to those expressed in my dissent in Knight, supra, 3 Cal.4th 296. (Kahn, supra, at pp. 1021-1025 (conc. & dis. opn. of Kennard, J.).) Since then, I have reiterated that view in two separate opinions. (Shin v. Ahn (2007) 42 Cal.4th 482, 500-502 [64 Cal.Rptr.3d 803, 165 P.3d 581] (conc. & dis. opn. of Kennard, J.); Avila v. Citrus Community *1165 College Dist. (2006) 38 Cal.4th 148, 169-174 [41 Cal.Rptr.3d 299, 131 P.3d 383] (conc. & dis. opn. of Kennard, J.) (Avila).)[1]
Today the majority further expands Knight’s no-duty-for-sports rule, this time by bringing within the rule’s ambit “recreational activities” (maj. opn., ante, at p. 1152) (here, a bumper car ride in an amusement park), saddling trial judges with the unenviable task of determining the risks of harm that are inherent in a particular recreational activity.
I
In 2005, plaintiff took her nine-year-old son on a bumper car ride at Great America, an amusement park in Santa Clara, California; she sat next to her son, who steered the car. The ride was “multidirectional” (cars could go in all directions). No written warnings prohibited “head-on” bumping, but riders who deliberately collided head on were told by the ride operator to stop. Plaintiff’s car was hit head on and from the back in close succession. As plaintiff put her hand on the car’s dashboard to brace herself, she fractured her wrist. She sued defendant Cedar Fair, L.P., the owner of the amusement park for, as relevant here, negligence.
At the time of the injury, defendant owned four other amusement parks. In those parks, the bumper car rides were unidirectional (cars could only go in one direction, around an island), allowing rear-end and side collisions but minimizing the likelihood of head-on collisions. Plaintiff here asserted that had the bumper car ride at Great America been unidirectional, the head-on collision that fractured her wrist would not have occurred.
Defendant successfully moved for summary judgment. The trial court ruled that plaintiff could not recover on her cause of action for negligence because *1166 under the no-duty-for-sports rule defendant had no duty to prevent the bumper cars from colliding head on. In a two-to-one decision the Court of Appeal reversed, holding that the no-duty-for-sports rule applies only to sports, and that a bumper car ride is not a sport. This court granted defendant’s petition for review.
II
Until the 1993 plurality decision in Knight, California had in negligence cases followed the common law doctrine of assumption of risk, a defense to liability for injuries resulting from “a specific, known and appreciated risk” to which the plaintiff had voluntarily consented. (Knight, supra, 3 Cal.4th at p. 325 (dis. opn. of Kennard, J.).) The consent could be express (through a plaintiff’s spoken or written words) or implied (inferred from the plaintiff’s conduct). (Ibid.) The plurality in Knight proposed that, for injuries occurring during active sports, tire assumption of risk doctrine be replaced with a rule that the Knight plurality called “ ‘primary assumption of risk’ ” (Knight, supra, at p. 310 (plur. opn. of George, J.)) and which I have called the “no-duty-for-sports rule” (e.g., Knight, supra, at p. 336 (dis. opn. of Kennard, J.)). A majority of this court later embraced the Knight rale. (See Cheong v. Antablin (1997) 16 Cal.4th 1063, 1067 [68 Cal.Rptr.2d 859, 946 P.2d 817]; Kahn, supra, 31 Cal.4th at pp. 995-996.)
Common law assumption of the risk was an affirmative defense to be asserted and proved by the defendant at trial. Duty, by contrast, is a question of law to be determined by the trial court before trial, on demurrer or on a motion for summary judgment. The no-duty-for-sports rale reduces the traditional standard of care—measured by the conduct of a reasonable person in like or similar circumstances—by imposing on all those involved in sports activities (participants, coaches, and hosts of sporting events) only the duty to avoid increasing the danger beyond the risks that are “inherent” in the sport. Whether the plaintiff knowingly assumed the risk of injury no longer matters. As my dissent in Knight explained, the no-duty-for-sports rale “recast the analysis of implied assumption of risk from a subjective evaluation of what a particular plaintiff knew and appreciated about the encountered risk into a determination of the presence or absence of duty legally imposed on the defendant ...[,] thus transforming an affirmative defense into an element of the plaintiff’s negligence action.” (Knight, supra, 3 Cal.4th at p. 324 (dis. opn. of Kennard, J.).) Consequently, the rale “eliminate[d] altogether the ‘reasonable person’ standard as the measure of duty actually owed” (id. at p. 325) by those involved in sports activities.
In an action seeking damages for a personal injury sustained while playing a sport, determining which risks are inherent in that sport is a difficult task. *1167 Some sports are so new or uncommon that their typical risks may not be evident. Even for sports that are familiar and widely played, moreover, the risks of physical injury to players of that sport are likely to vary greatly depending on, for example, the participants’ ages and genders, their levels of skill and experience, and the presence or absence of protective clothing and equipment. Because of the many variables, the “inherent risk” determination is often fact intensive and ill-suited for treatment as a question of law, which a trial court must decide without the benefit of an evidentiary hearing. The difficulties that trial courts will encounter when making these “inherent risk” determinations are greatly amplified by today’s decision expanding the no-duty-for-sports rule to also encompass recreational activities that are not sports.
The majority gives this reason for applying the no-duty-for-sports rule to recreational activities: “[Ajctive recreation, because it involves physical activity and is not essential to daily life, is particularly vulnerable to the chilling effects of potential tort liability for ordinary negligence.” (Maj. opn., ante, at p. 1157.) The majority later asserts: “The primary assumption of risk doctrine helps ensure that the threat of litigation and liability does not cause such recreational activities to be abandoned or fundamentally altered in an effort to eliminate or minimize inherent risks of injury.” (Id. at p. 1162.) But the majority offers no evidence for that view. Pertinent here is this comment by a major treatise on tort law: “It may be that some courts are in the process of creating a freestanding limited-duty rule, divorced from its foundation in the parties’ expectations. The opinions suggest that the duty should be limited because of the danger of a flood of litigation, and because of a supposed policy of encouraging vigorous physical competition. Both these reasons, as distinct from the parties’ reasonable expectations, may be doubted.” (1 Dobbs et al., The Law of Torts (2d ed. 2011), § 240, p. 868, fns. omitted.)
A final point: Even if the common law assumption of risk doctrine were still in place in California (see pp. 1165-1166, ante), plaintiff here would not necessarily prevail in her action for personal injury. Under that doctrine, “the pertinent inquiry is not what risk is inherent in a particular sport [or recreational activity]; rather, it is what risk the plaintiff consciously and voluntarily assumed.” (Avila, supra, 38 Cal.4th at p. 173 (conc. & dis. opn. of Kennard, J.).) Thus, the question here would be whether plaintiff voluntarily assumed the risk of the type of harm that ensued from her decision to ride the bumper car, “with knowledge and appreciation of that risk.” (Knight, supra, 3 Cal.4th at p. 326 (dis. opn. of Kennard, J.).) Even if plaintiff did not assume that risk, defendant may not have acted unreasonably by making the bumper car ride at Great America a multidirectional ride, and thus may not have breached its duty of care toward plaintiff. According to declarations in the appellate record, approximately 300,000 people rode on that ride in 2005, the year plaintiff was injured, and she was the only one to suffer a fracture. Based on such evidence, a jury could conclude that defendant was not negligent.
*1168 Because, for the reasons given above, I agree with the Court of Appeal that the no-duty-for-sports rule should not be extended to a bumper car ride, which the Court of Appeal observed is not a sport, I would affirm its judgment reversing the trial court’s grant of defendant’s summary judgment motion.

 Knight’s no-duty-for-sports rule has been strongly criticized in various legal journals. (See, e.g., Note, California Supreme Court Extends Assumption of Risk to Noncontact Sports—Shin v. Ahn, 42 Cal.4th 482 [64 Cal.Rptr.3d 803, 165 P.3d 581] (Cal. 2007) (2008) 121 Harv. L.Rev. 1253, 1260 [the California Legislature should “take Justice Kennard’s advice and restore traditional principles of negligence to the fore of sports torts jurisprudence”]; Ursin & Carter, Clarifying Duty: California’s No-Duty-for-Sports Regime (2008) 45 San Diego L.Rev. 383, 440 [“the only real use of the inherent risk concept is to cause confusion”]; Comment, Looking Beyond the Name of the Game: A Framework for Analyzing Recreational Sports Injury Cases (2001) 34 U.C. Davis L.Rev. 1029, 1057 [“The Knight decision sets an unreasonable standard of care for recreational sports injury cases that violates public policy.”]; Note, Fore! American Golf Corporation v. Superior Court: The Continued Uneven Application of California’s Flawed Doctrine of Assumption of Risk (2001) 29 W. St. U. L.Rev. 125, 145-146 [“Knight’s vague guidelines regarding duty analysis” are “a flawed conceptualization of the doctrine of assumption of risk” that have “produced uneven results.”]; Sugarman, Judges as Tort Law Un-Makers: Recent California Experience with “New” Torts (1999) 49 DePaul L.Rev. 455, 485 [expressing “disagreement with the policy judgment that recreational injuries are an appropriate place for such a ‘no duty’ rule”].)